Dan PERKINS, Appellant,

v.

UNITED STATES of America, Appellee.

No. 22135.

United States Court of Appeals, District of Columbia Circuit.

Argued April 13, 1970.

Decided May 27, 1970.

Mr. Stanley J. Krieger, Washington, D. C., (appointed by the court) for appellant.

Mr. Edwin K. Hall, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee. Messrs. David G. Bress, U. S. Atty., at the time the record was filed, and Roger E. Zuckerman, Asst. U. S. Atty., also entered appearances for appellee.

Before BAZELON, Chief Judge, WILBUR K. MILLER, Senior Circuit Judge, and ROBB, Circuit Judge.

## PER CURIAM:

The search and seizure challenged by the appellant were sustained by District Judge Youngdahl in a careful opinion, United States v. Perkins, 286 F. Supp. 259 (D.D.C. 1968). We agree with Judge Youngdahl, for the reasons stated in his opinion.

The appellant argues that his sentence was invalid because he was a narcotics addict. This claim is made for the first time on appeal and in any event there was no showing in the District Court that the appellant was an addict. In these circumstances we agree with the views expressed by Chief Judge Bazelon, concurring in part, in Hutcherson v. United States, 120 U.S. App.D.C. 274, 288, 345 F.2d 964, 978 (1965) that "we cannot consider these claims now since they were not advanced below and no evidence was offered to show that here possession was compelled by addiction."

Affirmed.

---

BAZELON, Chief Judge (dissenting):

I am troubled by two aspects of this case: (1) appellant's warrantless arrest and search, and (2) his five-year sentence for possessing ten heroin capsules.[1]

I

About 8:00 or 8:30 a. m. on July 13, 1967, as the District Court found, officers of the Narcotics Squad "received information from a previously reliable informant that Warren Williams was at 941 M Street, N. W., in room number 5, and that Williams was selling heroin at that location."[2] Although the police had previously relied on this informant in seeking warrants,[3] they chose not to obtain a warrant on this occasion. Instead, from about 9:30 to 10:30, the police observed 941 M Street and arrest-

---

1. Appellant was convicted of violating 21 U.S.C. § 174 (1964) and sentenced to the mandatory minimum of five years as a first offender; he was also convicted under 26 U.S.C. § 4704(a) (1964) for which he received a concurrent one-to-five-year sentence. While these statutes cover such multifarious offenses as fraudulent importation, concealment, purchase and sale of narcotics, the facts stipulated in this case evince that appellant's offense consisted of *possession* of the heroin in question. *See* Watson v. United States, D.C.

Cir. No. 21,186 (December 13, 1968, slip op. at 14–15), vacated (April 18, 1969) and reheard *en banc* (June 25, 1969).

2. United States v. Perkins, 286 F.Supp. 259, 260 (D.D.C.1968).

3. The officer who spoke with the informant testified that he had provided affidavits for search warrants "for about 5 or 6 years" and "people have been convicted for violation of the narcotics laws after the search warrants were executed."

ed several known narcotics users who were seen leaving the building.[4] One of these men confirmed the information received earlier and suggested that "Williams was getting ready to leave shortly." [5]

At this point, it would have been reasonable for the police to have sought a warrant to search apartment 5 and arrest Williams, meanwhile sending some officers back to stake out 941 M Street and arrest Williams if he left the building before the warrant issued.[6] While there may have been other reasonable courses, the one chosen by the officers was not among them. They entered 941 M Street without announcing their purpose and proceeded to the second floor where, through the open door of room 5, they saw appellant about to inject himself with a hypodermic syringe. The officers arrested and searched him and the other three occupants of the room, including Williams.

It has long been the rule that "the informed and deliberate determinations of magistrates empowered to issue warrants * * * are to be preferred over the hurried actions of officers." [7] Only "exigent circumstances," such as a suspect who is "fleeing or seeking to escape," [8] will outweigh the "slight delay

necessary to prepare papers and present the evidence to a magistrate." [9] By their own testimony, the officers in this case had sufficient probable cause for a warrant, and "no reason appears why an arrest warrant could not have been sought." [10]

The Government contends that the course followed was permissible because the officers found the door to apartment 5 open, and the crime was thus one committed "in the officers' presence" for which they needed no warrant.[11] As an initial matter, this rationale overlooks the fact that when the officers went to 941 M Street they had no assurance that the outside door, much less the door to room 5, would be open. More fundamentally, I believe this theory mistakes the point at which the search began. The Government's position is that the officers needed no warrant to cross the threshold of the rooming house. It argues specifically that consent or prior judicial authorization should be required *only* for quarters in buildings where privacy is protected by the presence of doormen or "security guards." [12] Such a classification would create an invidious discrimination which would make a man's rights depend on where he can afford to live.[13] It would

4. The grounds for these arrests do not appear.

5. *Perkins, supra* note 2, at 261.

6. *See* Ford v. United States (Kimble v. United States), 122 U.S.App.D.C. 259, 352 F.2d 927 (1965).

7. United States v. Lefkowitz, 285 U.S. 452, 464, 52 S.Ct. 420, 423, 76 L.Ed. 877 (1932). *See, e. g.,* Katz v. United States, 389 U.S. 347, 356–357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); Beck v. Ohio, 379 U.S. 89, 96, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); Aguilar v. Texas, 378 U.S. 108, 110–111, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

8. McDonald v. United States, 335 U.S. 451, 455, 69 S.Ct. 191, 93 L.Ed. 153 (1948).

9. Johnson v. United States, 333 U.S. 10, 15, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948). *Cf.* Warden v. Hayden, 387 U.S. 294, 298, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).

10. Jones v. United States, 357 U.S. 493, 500, 78 S.Ct. 1253, 1257, 2 L.Ed.2d 1514 (1958).

11. *See* Harris v. United States, 390 U.S. 234, 236, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); Carroll v. United States, 267 U.S. 132, 156–157, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

12. In effect, a guard acts as a very effective "lock" on the door. Yet whether a door is locked (and the Government notes that the door to 941 M St. was not) is without decisional significance. *See, e. g.,* Sabbath v. United States, 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968); Keiningham v. United States, 109 U.S.App.D.C. 272, 287 F.2d 126 (1960).

13. *See* Griffin v. Illinois, 351 U.S. 12, 19, 76 S.Ct. 585, 100 L.Ed. 891 (1956). *See also* Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); Edwards v. California, 314 U.S. 160, 184–

also make superfluous the pending "no-knock" provision, *see* H.R. 16196, 91st Cong., 2d Sess. § 209(a) (1970), at least as applied to boarding house-type residences (which are widespread in the inner city) and, perhaps, to all buildings without doormen or security guards. The hallways of residential buildings, whether luxury highrises or humble rooming houses, are not public streets.[14] Consequently, I believe the narcotics officers were obliged to possess a warrant before entering 941 M Street and proceeding to the second floor. *Cf.* Katz v. United States, 389 U.S. 347, 88 S.Ct. 507 (1967).

The remaining issue concerning appellant's fourth amendment claim is whether he has standing to seek exclusion of the fruits of this entry when he was only a guest in the room and not the lessee. The exclusionary rule exists to deter unlawful official acts, *see* Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), and it is apparent that no one is likely to litigate an illegal entry more vigorously than a person who may be incriminated by the evidence seized therein.[15] Hence, the exact legal status of appellant's occupancy of the room is without significance;[16] as one "legitimately on [the] premises," he has standing to challenge the legality of the officers' warrantless entry "when its fruits are proposed to be used against him." [17] Accordingly, I conclude that the items seized from appellant should be suppressed and his conviction reversed.

## II

Independently of the validity of appellant's conviction, his five-year sentence raises at least two questions for me: (a) whether a narcotics addict may be punished for possessing ten capsules of heroin for his own use, and (b) whether punishment for five years without treatment for this conduct violates the eighth amendment?

In Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), the Supreme Court held that narcotics addiction may not be made the subject of criminal prohibition. In dictum, the Court said that addicts may nevertheless be punished for possessing drugs.[18] The logic of punishing a man for manifestations of his addiction, while forbidding punishment of addiction itself, is not immediately apparent, and the Court has subsequently intimated that this dictum should not be taken literally. A majority of the Court in Powell v. Texas, 392 U.S. 514, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968), took the position, as expressed by Mr. Justice White, that "unless *Robinson* is to be abandoned, the

185, 62 S.Ct. 164, 86 L.Ed. 119 (1941) (Jackson, J., concurring).

14. In the cases relied on by the court below, Sabbath v. United States, *supra* note 12, and Whitley v. United States, 99 U.S. App.D.C. 159, 237 F.2d 787 (1956), the evidence objected to *was* held to have been illegally seized because the officers were improperly on the premises (under 18 U.S.C. § 3109 and the fourth amendment, respectively); the question whether the officers would properly have been in the buildings' hallways was specifically reserved.

15. The exclusionary rule creates "a general citizen's right to have the police deterred, which can be asserted by all defendants because of their adversary status." Note, Standing to Object to An Unreasonable Search and Seizure, 34 U.Chi.L.Rev. 342,

365 (1967). *Cf.* Association of Data Processing Service Organizations v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

16. "Distinctions such as those between 'lessee,' 'license,' 'invitee' and 'guest,' often only of gossamer strength, ought not to be determinative in fashioning procedures ultimately referable to constitutional safeguards." Jones v. United States, 362 U.S. 257, 266, 80 S.Ct. 725, 733, 4 L.Ed.2d 697 (1960).

17. Jones v. United States, *supra* note 16, at 267, 80 S.Ct. at 734. *Compare* Mancusi v. DeForte, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968) and Katz v. United States, *supra* note 7, *with* Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

18. 370 U.S. at 664, 82 S.Ct. 1417.

use of narcotics by an addict must be beyond the reach of the criminal law."[19] On the present record it is not possible, however, to say whether appellant had an "inability to abstain" from heroin.[20]

The implications of *Robinson* did not go unnoticed in Congress, which in 1966 adopted the Narcotics Addict Rehabilitation Act, Pub.L. No. 89–793, 80 Stat. 1438. That statute provides that an addict "likely to be rehabilitated through treatment" can be committed to an institution which will provide him with "medical, educational, social, psychological, and vocational services" designed to cure him of his addiction and to prevent its recurrence. 18 U.S.C. § 4251 *et seq.* (Supp. IV, 1969). In the present case, however, no consideration seems to have been given to whether appellant qualified for treatment under the Act.[21] A five-year prison term for a narcotics addict, without treatment for the illness which brought about his incarceration, raises for me serious questions of "excessive" punishment. Weems v. United States, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910).[22] Assuming that Congress has the power to set minimum prison terms, I nonetheless believe that appellant's five-year imprisonment, without provision for treatment, is so severe when compared to sentences for other crimes,[23] as to "excite wonder in minds accustomed to a more considerate adaptation of punishment to the degree of crime." *Id.* at 365, 30 S.Ct. at 548. There is no indication that appellant was selling heroin; he is apparently being punished for being a threat to himself in his use of the drug.

Appellant also contends that his punishment is "cruel and unusual" because he has had to undergo a painful "cold turkey" withdrawal without medical assistance. Yet on this point, too, the record is silent, although it does appear that appellant was in custody for ten months prior to trial, so his withdrawal was in all probability completed before he began serving his sentence.[24] In any event, *Powell* and *Robinson* suggest that sentencing appellant to five years in prison for possessing ten heroin capsules, apparently for his own use, treads very near the brink of unconstitutionality. At the very least, I would remand the case for exploration by the trial court of the factors surrounding appellant's addiction and his amenability to treatment under the Narcotics

19. 392 U.S. at 548–549, 88 S.Ct. at 2162. Mr. Justice White voted to affirm Powell's conviction for being drunk in a public place only because "[n]othing in the record" supported the conclusion that Powell had a compulsion "to frequent public places when intoxicated." *Id.* at 549, 88 S.Ct. at 2162. Four Justices dissented, in an opinion by Mr. Justice Fortas, which concluded that the eighth amendment is violated when a man is punished for something which "is part of the pattern of his disease and is occasioned by a compulsion symptomatic of the disease." *Id.* at 569, 88 S.Ct. at 2172.

20. *See id.* at 524–526, 88 S.Ct. 2145 (opinion of Marshall, J.)

21. The record (which shows that appellant was in the process of injecting heroin when arrested) suggests, but does not establish, that appellant is an "addict," defined by the statute as one "who habitually uses any narcotic drug." 18 U.S.C. § 4251(a) (Supp. V, 1970). The record also indicates that appellant is not disqualified under any statutory provision (*e. g.*, as a repeated felon, violent criminal, or convicted seller of narcotics). *Id.* § 4251(f).

22. *Cf.* Trop v. Dulles, 356 U.S. 86, 100, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958): "While the State has the power to punish, the [Eighth] Amendment stands to assure that this power be exercised within the limits of civilized standards."

23. *E. g.*, 18 U.S.C. § 871 (threatening the life of the President), five years *maximum; id.* § 872 (extortion), three years *maximum; id.* § 873 (blackmail), one year *maximum; id.* § 1584 (holding or selling slaves), five years *maximum; id.* § 1621 (perjury), five years *maximum.*

24. While this case may not raise the question of post-conviction "cold turkey" withdrawal, that says nothing about the Government's obligation to treat an addict undergoing withdrawal while in pretrial custody.

Addict Rehabilitation Act, and then hold the case pending the outcome of our *en banc* consideration of No. 21,186, Watson v. United States.[25]

25. Failure to confront these issues now can only lead to more protracted litigation under 28 U.S.C. § 2255 (1964), which seems wasteful of judicial resources given the

pendency of *Watson. Compare* Hutcherson v. United States, 120 U.S.App.D.C. 274, 288, 345 F.2d 964, 978 (1965) (Bazelon, C. J., concurring and dissenting).