UNITED STATES of America, Plaintiff–Appellee,

v.

Alan NOHARA, Defendant–Appellant.

No. 92–10599.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 12, 1993.

Decided Aug. 27, 1993.

---

**1240**

Gerald H. Kurashima, Honolulu, HI, for defendant-appellant.

Lawrence Tong, Asst. U.S. Atty., Honolulu, HI, for plaintiff-appellee.

Before: SNEED, POOLE, and TROTT, Circuit Judges.

SNEED, Circuit Judge:

Appellant Alan Nohara ("Nohara") appeals his conviction for distributing methamphetamine in violation of 21 U.S.C. § 841(a). The primary issue is whether Nohara had a reasonable expectation of privacy in the hallway outside his apartment in his high security, high rise apartment building. We hold that he did not and affirm.

I.

*FACTS AND PRIOR PROCEEDINGS*

At 11:40 p.m. on February 6, 1992, DEA agents arrested Barry Nobrega ("Nobrega") for possession of methamphetamine. Nobrega agreed to cooperate against his supplier, Nohara. Nobrega told the agents he had been "fronted" nine grams of methamphetamine by Nohara at about 9:00 p.m. that night, had made a partial payment, but owed Nohara for the balance. Nobrega then accompanied and directed the agents to the Craigside Condominium, where Nobrega said Nohara lived.

The Craigside is a high security, high rise apartment building. It has twenty-seven stories with seven apartments per floor. There are twenty-four hour security guards on duty. Residents can monitor the entrances to the building and garage on their own television sets. The elevator conveys evening guests directly and solely to their hosts' floors.

When the agents and Nobrega arrived at the Craigside at 4:00 a.m. on February 7th, Agent Howard went with Nobrega to the guest entrance, which had a telephone intercom. Howard stayed out of sight of the camera while Nobrega called and identified himself to Nohara, who "buzzed" him (and Agent Howard) in. A security guard at another entrance let in the other DEA agents after they identified themselves.

The agents and Nobrega went to Nohara's apartment on the twenty-fifth floor. The door to Nohara's apartment was slightly inset from the main hallway, so by positioning themselves to the right of the door, the officers could not be seen by anyone looking directly out of the apartment. Nobrega knocked; the peephole went dark as Nohara looked outside, then he opened the door. As he did so, Agent Aiu peeked around the corner of the hallway and saw Nohara holding a black bag and a glass pipe with white residue, which he recognized as methamphetamine. Nohara also held a butane torch. As Agent Aiu moved in to arrest Nohara, Agent Lowe followed him and also saw the "meth pipe" and black bag in plain view in Nohara's

hand.[1] The agents took the items from Nohara and placed him under arrest. They handcuffed him and seated him on a chair in the hall. Within two to three minutes from when Nohara opened the door, Aiu stood a few feet from him, searched the black bag and found a white pouch containing one ounce of methamphetamine.

An agent then did a protective sweep of the apartment and saw, in plain view on the coffee table, more meth pipes and about a gram of methamphetamine. A woman was also present in the apartment.

The agents then secured the apartment and got a search warrant to look for narcotics and firearms. They executed the search warrant at 9:45 a.m. on February 7th and found, among other things, a scale, money counting machine, semi-automatic handgun, ammunition, drugs, a telephone tap detector, and $38,000 in cash.

Nohara was charged under 21 U.S.C. § 841(a)(1) with distributing and possessing with intent to distribute a Schedule II controlled substance, and carrying a firearm in relation to the drug crime. The district court denied Nohara's motion to suppress the evidence seized on February 7, 1992 at 4:00 a.m. At trial, Nohara renewed his motion to suppress evidence, which the district court again denied. Nohara did not testify at his trial. He was found guilty, and filed a timely notice of appeal.

## II.

### JURISDICTION AND STANDARDS OF REVIEW

The district court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. §§ 1291 and 1294. The lawfulness of a search and seizure is a mixed question of law and fact reviewed *de novo*. *United States v. Huffhines*, 967 F.2d 314, 316 (9th Cir.1992). However, we accept a district court's findings of fact at a suppression hearing unless they are clearly erroneous. *Id.*

## III.

### DISCUSSION

■ The Fourth Amendment prohibits unreasonable searches and seizures in those areas in which a person has a "reasonable expectation of privacy." *Katz v. United States*, 389 U.S. 347, 360, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring). Nohara argues he had a reasonable expectation of privacy in his building and his hallway and the agents conducted an illegal search when they peeked around the corner of his hallway. He contends this illegal search tainted the plain view seizure of the meth pipe and black bag, which should not have been used to support the search warrant. Thus, Nohara contends the warrant fails for lack of probable cause. We must first decide whether Nohara had a reasonable expectation of privacy in the hallway outside his apartment. If he did not, this argument necessarily fails.

### A. Nohara did not have a reasonable expectation of privacy in the hallway outside his apartment.

■ One has a reasonable expectation of privacy if one has an actual, subjective expectation of privacy and if the expectation is one that society is prepared to recognize as reasonable. *Katz*, 389 U.S. at 361, 88 S.Ct. at 516–17.

It is unclear whether Nohara had a subjective expectation of privacy in his building and hallway. However, we need not decide this issue because we conclude that any expectation Nohara might have had is not one that society recognizes as reasonable. *See United States v. Calhoun*, 542 F.2d 1094, 1100 (9th Cir.1976) (dictum) ("The hallway of an apartment building, as with the threshold of one's dwelling, is a 'public' place for purposes of interpreting the Fourth Amendment."), *cert. denied*, 429 U.S. 1064, 97 S.Ct. 792, 50 L.Ed.2d 781 (1977).

---

1. At the suppression hearing, Nohara maintained he was holding a butane torch and a black bag when he opened the door. Nohara denied holding a meth pipe. Nobrega testified he was looking down when Nohara opened the door—he could not corroborate whether Nohara held a meth pipe or not.

Nohara relies on *United States v. Fluker*, 543 F.2d 709, 716 (9th Cir.1976), in which we held that the appellant had a reasonable expectation of privacy in the corridor area separating the door of his apartment from the outer doorway of the apartment building. However, the facts of *Fluker* differ greatly from the facts here. In *Fluker*, we relied on the fact that the appellant lived in one of only two basement apartments as opposed to a multi-unit complex. *Id.* Moreover, we emphasized our holding applied only to the narrow facts of that case:

> [W]e find that under the narrow set of facts in this case, appellant ... had a reasonable expectation of privacy as to the hallway separating his apartment door from the outer, locked door.... [W]e are *not* intimating that a similar result would obtain in circumstances other than the one before us; our holding is confined to the facts of this case.

*Id.* at 716–17. Accordingly, we have previously refused to extend the reach of *Fluker*. *United States v. Roberts*, 747 F.2d 537, 542 (9th Cir.1984) (no reasonable expectation of privacy in private road because appellant "had no control over the five other homeowners: they could have invited anyone, including police officers, to drive up the road.").

Most other circuits agree a tenant does not have a reasonable expectation of privacy in an apartment building hallway or other common area. *United States v. Concepcion*, 942 F.2d 1170, 1172 (7th Cir.1991) (apartment common areas); *United States v. Barrios–Moriera*, 872 F.2d 12, 14 (2d Cir.) (apartment hallway), *cert. denied*, 493 U.S. 953, 110 S.Ct. 364, 107 L.Ed.2d 350 (1989); *United States v. Eisler*, 567 F.2d 814, 816 (8th Cir.1977) (apartment hallway); *United States v. Cruz Pagan*, 537 F.2d 554, 558 (1st Cir.1976) (apartment garage); *United States v. Anderson*, 533 F.2d 1210, 1214 (D.C.Cir.1976) (rooming house hallway).

Nohara also relies on *United States v. Carriger*, 541 F.2d 545, 552 (6th Cir.1976), in which the Sixth Circuit found a tenant did have a reasonable expectation of privacy in an apartment building common area because the officers had trespassed to gain entry.[2] However, we join the First, Second, and Eighth Circuits which have rejected this rationale and held an apartment dweller has no reasonable expectation of privacy in the common areas of the building whether the officer trespasses or not. *Barrios–Moriera*, 872 F.2d at 14; *United States v. McGrane*, 746 F.2d .632, 634 (8th Cir.1984); *Cruz Pagan*, 537 F.2d at 558. The Eighth Circuit stated it well in *Eisler*:

> The locks on the doors to the entrances of the apartment complex were to provide security to the occupants, not privacy in common hallways.... An expectation of privacy necessarily implies an expectation that one will be free of *any* intrusion, not merely unwarranted intrusions. The common hallways of [defendant's] apartment building were available for the use of residents and their guests, the landlord and his agents, and others having legitimate reasons to be on the premises. That [the DEA agent] was a technical trespasser in a *common* hallway is of no consequence since appellants had no reasonable expectation that conversations taking place there would be free from intrusion.

*Eisler*, 567 F.2d at 816 (emphasis in original). We hold that Nohara did not have a reasonable expectation of privacy in the hallway.

**B.** *The plain view seizure of the meth pipe.*

■ As Agent Aiu peeked around the corner, he immediately recognized Nohara was holding a meth pipe containing white residue, along with a black bag, in his left hand. Seeing the meth pipe in plain view gave Aiu probable cause to arrest Nohara. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); *Hollyfield v. United States*, 407 F.2d 1326 (9th Cir.1969) (per curiam) (seeing drug paraphernalia in plain view supplied probable cause to arrest). As Aiu moved around the corner to arrest Nohara, Agent Lowe followed him, "keyed

---

**2.** Only Agent Howard, who sneaked in when Nohara "buzzed in" Nobrega, could be called a trespasser. The other officers, including Agents Aiu and Lowe who saw the meth pipe in No- hara's hand as he opened the door, were not trespassers. They had been let in by a security guard after identifying themselves as DEA agents on an investigation.

in" on Nohara's hands, saw the meth pipe in plain view, and immediately recognized it to be a meth pipe containing drug residue.

■ Incriminating evidence in plain view can be seized if the officer does not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. *Horton v. California*, 496 U.S. 128, 136, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112 (1990). The item must be in plain view, and its incriminating character must also be "immediately apparent." *Id.* (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971)).

The plain view seizure of the meth pipe was proper. Since Nohara did not have a reasonable expectation of privacy in the hallway outside his apartment, Agent Aiu did not conduct a Fourth Amendment search when he peeked around the corner of the hallway as Nohara opened the door. *See United States v. Garcia*, 997 F.2d 1273 (9th Cir.1993) (looking through screen door at back door of apartment did not constitute search).

The district court did not commit clear error when it decided Nohara held a meth pipe, as well as the black bag and butane torch, when he opened the door. At his suppression hearing, Nohara testified that he was not holding a meth pipe and that he was going to use the butane torch, which measured two inches by six inches, to light a cigarette. The court found the two agents were more credible than was Nohara on this point; there was no clear error.

C. *The search incident to arrest of the black bag.*

■ An officer may make a "search incident to arrest" of the area within the arrestee's immediate control to look for weapons or destructible evidence. *Chimel v. California*, 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2039–40, 23 L.Ed.2d 685 (1969). In *United States v. Turner*, 926 F.2d 883, 887–88 (9th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 103, 116 L.Ed.2d 73 (1991), we clarified our test for a valid search incident to arrest: 1) the area searched must be that area under the arrestee's immediate control when he was arrested, and 2) events between the time

of the arrest and search must not render the search unreasonable.

■ Here, the first *Turner* element was met. Nohara was holding the black bag as he opened the door. The black bag was both under his control and likely to contain destructible evidence. Furthermore, the second *Turner* element was met—intervening events did not make the search unreasonable. In *Turner*, the officers handcuffed the defendant, took him into the next room for safety reasons, and performed the search incident to arrest without a long delay. We held these actions did not make the search unreasonable. *Id.* Likewise, the officers here did not make the search unreasonable by handcuffing Nohara, seating him in the hallway, and searching the black bag within two to three minutes of his arrest.

D. *The protective sweep of the apartment.*

Nohara contends that the agents should not have conducted a protective sweep of his apartment, during which they seized one gram of methamphetamine and some meth pipes on a coffee table. We need not analyze this argument, however, because the methamphetamine and meth pipes on the coffee table were not needed to establish probable cause. *United States v. Vasey*, 834 F.2d 782, 788 (9th Cir.1987). Moreover, admitting this evidence at trial was at worst harmless error because it was cumulative to the substantial evidence obtained against Nohara. *United States v. Armstrong*, 654 F.2d 1328, 1336 (9th Cir.1981), *cert. denied*, 454 U.S. 1157, 102 S.Ct. 1032, 71 L.Ed.2d 315 *and cert. denied*, 455 U.S. 926, 102 S.Ct. 1289, 71 L.Ed.2d 470 (1982).

E. *Nohara waived his right to testify by remaining silent at his trial.*

■ Whether a defendant received ineffective assistance of counsel is reviewed *de novo*. *United States v. Swanson*, 943 F.2d 1070, 1072 (9th Cir.1991). Nohara argues he was denied his Sixth Amendment right to effective assistance of counsel because his lawyer waived his right to testify at trial and neither his lawyer nor the court informed him of his right to testify.

This argument is precluded by *United States v. Edwards*, 897 F.2d 445 (9th Cir.), *cert. denied*, 498 U.S. 1000, 111 S.Ct. 560, 112 L.Ed.2d 567 (1990). In *Edwards*, the defendant wanted to testify, but the lawyer misunderstood him and did not call him as a witness. *Id.* at 446. We held the court has no duty to advise the defendant of his right to testify, nor is the court required to ensure that an on-the-record waiver has occurred. *Id.* When a defendant is silent in the face of his attorney's decision not to call him as a witness, he has waived his right to testify. *Id.* at 447.

**AFFIRMED.**