**UNITED STATES of America,**

v.

**Joseph DRUMMOND and Angel McPherson, Defendants.**

**No. Crim.A. 00–14(RWR).**

United States District Court, District of Columbia.

May 24, 2000.

James Flood, United States Attorney's Office, Washington, D.C., for plaintiff.

Reita Pauline Pendry, Federal Public Defender, Washington, D.C., Joseph Roll Conte, Bond, Conte & Norman, Washington, D.C., for defendants.

## MEMORANDUM OPINION

ROBERTS, District Judge.

Defendants in this case are both charged with two counts of unlawful possession of unregistered firearms and two counts of unlawful possession of controlled substances. In addition, defendant Drummond is charged with one count of unlawful possession of a firearm by a convicted felon. Defendant Drummond moved to suppress tangible evidence seized from the defendants' shared apartment on the day of their arrest, arguing that law enforcement officers failed to knock and announce their presence properly when executing a search warrant at that apartment. Defendant McPherson joined in that motion.[1]

I find that under the facts of this case, the Fourth Amendment and the knock and announce statute, 18 U.S.C. § 3109 (1994) (" § 3109"), required the police to do more than they did before entering the premises. The tangible evidence seized as a result of the subsequent search therefore must be suppressed due to the knock and announce violation.

## I. Facts

On December 18, 1999, law enforcement officers executed a valid warrant[2] to search for narcotics-related evidence at apartment number one, 1837 Kendall Street, N.E., Washington, D.C. ("1837 Kendall"). (Motions Hearing Tr. ("Tr.") at 4.) Defendants in this case both live in that apartment. The police obtained the warrant after a confidential source told them that he had observed narcotics at that location. (Tr. at 4.) In addition, police had received complaints from local residents about narcotics sales there. (*Id.* at 5.)

The apartment is in a small, residential, two-story dwelling containing only two apartments—the defendants' first-floor apartment and an apartment upstairs. (Photographs admitted as Def.'s Exs. 1, 4, 5.) The outer door to the dwelling is opaque, with no windows allowing visitors to see into the space behind it. (Def.'s Ex. 1.) Two utility meters are mounted to the left of the outer door. (*Id.*) There appears to be a mailbox directly to the right of the outer door. (*Id.*)[3] The outer door is hinged on the left. (*Id.*) It opens into a small entryway landing at the base of the narrow staircase leading to the upstairs apartment. (Def.'s Ex. 4.) The landing's width barely exceeds that of the narrow staircase, and its depth is less than its width. (Def.'s Exs. 4, 5.) The inner door to apartment one is immediately to the right of the landing. (Tr. at 7.) Defendants represent in their papers that there were no other residents living at 1837 Kendall at the time of the search. (Drummond's Mot. Suppress Tangible Evid. at 2.) The government has offered no evidence of other residents at that address and appears to concede the vacancy in the second floor apartment at 1837 Kendall. (Government's Opp'n to Mot. Suppress Tangible Evid. at 2.)

---

1. Defendant McPherson also moved to suppress statements she made at the apartment after she was arrested. At the motions hearing on April 13, 2000, defendant Drummond orally moved to suppress his statements obtained at the scene as well. This opinion addresses only the motions to suppress tangible evidence.

2. Defendants have not challenged the validity of the warrant.

3. Neither inner apartment door appears to have a mail drop slot. (Def.'s Exs. 4, 5.)

Several hours before the warrant was executed, the confidential source provided the police with some information about the apartment. (*Id.* at 19–21.) The source told the officers that the front door of the building at 1837 Kendall was "usually secured; sometimes unlocked," (*id.* at 21), and that the front door to apartment number one was sometimes left open by the defendants. (*Id.*) Police did not otherwise discuss the layout of the apartment with the source, nor was the source asked any questions about whether there were other residents in the building. (*Id.*) When the police arrived at 1837 Kendall on December 18, 1999, they found the outer door locked. (*Id.* at 6.) The police did not knock and announce their presence at that door. (*Id.*) The police used a battering ram or halogen bar to force their way through this outer door. (*Id.*)

The police then stepped into the small entryway and found the inner door to apartment number one slightly ajar. (*Id.* at 7.) At this inner door, a police officer knocked and announced, "Police, search warrant. Police, search warrant. Open the door." (*Id.* at 26.) Immediately after this announcement, the police pushed open the inner door and entered the apartment. (*Id.* at 27.)

Upon entering the apartment, police observed Drummond coming from the bathroom into the living room. (*Id.* at 26.) The officers spread out through the apartment to secure the premises. (*Id.* at 35.) They found McPherson in the bedroom of the apartment. (*Id.* at 10.)

The search yielded the following items: 1) a .25 caliber pistol; 2) a 12 gauge shotgun; 3) $ 1175.00 in cash; 4) three clear ziplock bags of heroin; 5) two blue ziplock bags of crack cocaine; 6) mail belonging to each of the defendants; and 7) two cell phones. (Government's Opp'n to Mot. Suppress Tangible Evid. at 2.) The defendants seek to suppress all of that evidence.

## II. Law

Defendants argue that the police officers' failure to knock and announce their presence and authority at the outer door at 1837 Kendall on December 18, 1999 violates the Fourth Amendment and 18 U.S.C. § 3109. Defendants also argue that the police violated the knock and announce requirement by not waiting a sufficient time to allow the defendants to respond after knocking and announcing at the inner door. Based on these alleged violations, defendants argue that all evidence seized should be suppressed.

The touchstone for Fourth Amendment analysis of government action is reasonableness. *See United States v. Ramirez*, 523 U.S. 65, 71, 118 S.Ct. 992, 140 L.Ed.2d 191 (1998). The common law knock and announce principle forms part of the Fourth Amendment reasonableness inquiry. *See Wilson v. Arkansas*, 514 U.S. 927, 930, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995). Section 3109 codifies the common law knock and announce requirements. *See Miller v. United States*, 357 U.S. 301, 313, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958). Taken together, these principles establish that if the police do not comply with § 3109, they violate the reasonableness requirement of the Fourth Amendment. In this case, as there is no other challenge to the reasonableness of the search aside from the failure to knock and announce, the analyses of the alleged § 3109 violation and the alleged Fourth Amendment violation are the same.

Section 3109 states:

The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

18 U.S.C. § 3109 (1994). Thus, forced entry is allowed only if the police are denied entry to the home, either affirmatively or

constructively, after announcing their presence. *See United States v. Spriggs,* 996 F.2d 320, 322 (D.C.Cir.1993).

■ The defendants' argument that the police were required to knock and announce at the outer door, in order to comply with constitutional and statutory requirements, implicates additional principles. "The Fourth Amendment 'protects people from unreasonable government intrusions into their legitimate expectations of privacy.'" *United States v. Lyons,* 706 F.2d 321, 325 (D.C.Cir.1983) (quoting *United States v. Chadwick,* 433 U.S. 1, 7, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977)). Importantly, "the Fourth Amendment protects people not places." *Katz v. United States,* 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Thus, in assessing this argument, the focus will not be the characterization of the place at issue but an analysis of whether the defendants had "a reasonable expectation that uninvited and unauthorized persons [would] not intrude into a particular area." *Lyons,* 706 F.2d at 325.

■ In determining whether an individual had a legitimate expectation of privacy regarding an area, "[t]he crucial factor is whether a person's expectations are founded on 'understandings that are recognized and permitted by society.'" *Id.* at 327 (quoting *Rakas v. Illinois,* 439 U.S. 128, 144 n. 12, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)). The defendants must also establish that they had a subjective or actual expectation of privacy in the area in question. *Lyons,* 706 F.2d at 328 (citing *Smith v. Maryland,* 442 U.S. 735, 740 & n. 5, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979)). One can relinquish one's expectation of privacy in an area to certain individuals without sacrificing the right to keep the area private from all others. Thus, the fact that a landlord has a key does not defeat a tenant's legitimate expectation of privacy in his or her home. *See Lyons,* 706 F.2d at 328. Other factors to consider are "'whether the defendant has a [property or] possessory interest in the thing seized or the place searched, whether he has the right to exclude others from the place, ... whether he took normal precautions to maintain his privacy and whether he was legitimately on the premises.'" *United States v. Burnett,* 890 F.2d 1233, 1237 (D.C.Cir.1989) (quoting *United States v. Robinson,* 698 F.2d 448, 454 (D.C.Cir. 1983)) (other citations omitted).

Courts that have spoken about whether police are required to knock and announce at outer doors have consistently looked to see whether the defendant had a legitimate expectation of privacy in the area behind the outer door. *See, e.g., United States v. Acosta,* 965 F.2d 1248, 1253 (3d Cir.1992); *United States v. Fluker,* 543 F.2d 709, 716 (9th Cir.1976); *United States v. Perkins,* 286 F.Supp. 259, 262 (D.D.C. 1968). The critical issue in this case, therefore, is whether the defendants had a legitimate expectation of privacy in the entryway landing just inside the outer door and just in front of their inner door at 1837 Kendall. If they did, then the police were required to knock and announce before entering that area.

■ When the police are required to knock and announce their presence and authority, they must wait briefly after doing so, in order to allow the residents of a home the chance to comply with law enforcement's request to open the home for a search. *See Spriggs,* 996 F.2d at 322. Fifteen seconds is sufficient. *Id.* at 323. A three to five second wait has been held to be insufficient, absent exigent circumstances. *See id.* (citing *United States v. Rodriguez,* 663 F.Supp. 585, 588 (D.D.C. 1987)).

■■ The police are excused from the knock and announce requirement if they "have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." *Richards v. Wisconsin,* 520 U.S.

385, 394, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997). However, the Supreme Court has rejected the idea that a search warrant to enter a dwelling to look for narcotics automatically justifies a no-knock entry. *See Richards*, 520 U.S. at 394–95, 117 S.Ct. 1416. While drug investigations may frequently involve the risk of destruction of evidence, "not every drug investigation will pose [this] risk to a substantial degree." *Id.* at 393, 117 S.Ct. 1416. Police must have a reasonable suspicion, based on articulable facts, that inhabitants are destroying evidence before the exigent circumstances exception to the knock and announce rule comes into play. *See id.* at 394, 117 S.Ct. 1416. "[I]t is the duty of a court ... to determine whether the facts and circumstances of the particular entry justified dispensing with the knock and announce rule." *Id.* Absent sufficiently exigent circumstances, a failure to knock and announce properly requires suppression of the evidence seized. *See, e.g., In re Search Warrant Dated July 4, 1977, for Premises at 2125 S Street, Northwest, Washington, D.C.,* 667 F.2d 117, 136 (D.C.Cir.1981) (abrogated on other grounds, *Horton v. California,* 496 U.S. 128, 153, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990)).

## III. Analysis

### A. Outer Door

■ The factors outlined by the D.C. Circuit weigh in favor of finding that these defendants had a legitimate expectation of privacy in the entryway behind the outer door. Consequently, the police were obliged to enter this area in a reasonable manner under the Fourth Amendment. Because the Fourth Amendment standard includes the common law knock and announce requirement and because the police did not knock and announce at the outer door, the defendants' argument must prevail and the evidence seized from the apartment must be suppressed.

Defendants have asserted, and the government has not disproven, that they were the only people with access to this area aside from their landlord. They demonstrated a subjective understanding of their expectation of privacy in that area through the uncontraverted testimony that they usually kept the outer door of the building locked and on several occasions left their inner door unlocked and open. Defendants would reasonably have expected that no one else would be in that entryway without their permission—not mail carriers or meter readers [4], not other tenants or their guests, not census takers or peddlers, not anyone.

The criteria set forth in *Burnett* also support the defendants' arguments. *See Burnett,* 890 F.2d at 1237. The defendants here had a property interest in the area behind the outer door due the fact that they lived in the apartment and used the entryway landing as the entrance to their apartment. Thus, they were legitimately on the premises. I infer that they had the right to exclude others from the area, as the sole occupants of the building. Defendants took no action to detract from the privacy they retained in this area. The outer door remained closed and locked and there were no windows on that door to let anyone see into the landing. Based on all of these facts, I find that these tenants' expectation of privacy in the small entryway landing of their small, residential, two-story dwelling, containing only two

---

4. As stated above, one of the pictures entered into evidence shows a mailbox and utility meters located outside of the outer door. (Def.'s Ex. 1.) Courts may, of course, draw reasonable inferences from any evidence in the record, including photographs. *See, e.g., United States v. Porter,* 821 F.2d 968, 974 (4th Cir.1987) (finding no error in the district court's admission of photographs of alleged co-conspirators to "support the inference that the conspirators photographed together most likely knew each other prior to January 1981"); *see also United States v. Spinner,* 152 F.3d 950, 962 (D.C.Cir.1998) (Garland, J. dissenting) (drawing inference that the pistol grip of a gun extended below the action of the weapon based on a picture of it).

apartments, one of which is vacant, was "founded on understandings that are recognized and permitted by society." *Lyons,* 706 F.2d at 325 (internal citations omitted).

Defendants rely primarily on *United States v. Fluker,* 543 F.2d 709 (9th Cir. 1976), which presented a similar set of facts. In *Fluker,* the defendants lived in the basement of a building which contained only two apartments total, both located in the basement. *See id.* at 712. To get to the apartments, one had to descend a stairwell and open an outside door. *See id.* The two apartments were located off of a small corridor which was immediately behind the outer door. *See id.* The police failed to knock at the outer door when arriving at this residence to execute a search warrant. *See id.* The Ninth Circuit held that on this set of facts, the failure to knock and announce at the outer door constituted a violation of the defendants' reasonable expectation of privacy in the small hallway. *See id.* at 716–17. I find that the same conclusion is supported by the facts presented here.

The government offers five arguments as to why I should not reach the same conclusion as did the *Fluker* court. First, the government argues that one cannot have a reasonable expectation of privacy in the hallway of an apartment building because such an area is public by definition. In support of that point, it cites cases where other individuals in addition to the defendants had access to the areas in question, such as *United States v. Concepcion,* 942 F.2d 1170 (7th Cir.1991) (involving a building with five apartments other than the defendant's room); *United States v. Barrios–Moriera,* 872 F.2d 12 (2d Cir.

1989) (concerning a multi-dwelling apartment complex); *United States v. Eisler,* 567 F.2d 814 (8th Cir.1977) (pertaining to an apartment complex); *United States v. Cruz Pagan,* 537 F.2d 554 (1st Cir.1976) (relating to the underground garage of a condominium complex); *United States v. Anderson,* 533 F.2d 1210 (D.C.Cir.1976) (discussing an eight-room boarding house); and *United States v. Perkins,* 286 F.Supp. 259 (D.D.C.1968) (describing a five room boarding house).[5] In this case, the area in question is not common to anyone but these two defendants. There was no shared space between these defendants and any other member of the general public, as there was in each of the cases cited by the government. Defendants here would have "reasonably believed that [this area was] not open to the world at large." *Lyons,* 706 F.2d at 325–26. The difference between this building and the buildings involved in the cases cited by the government highlights the critical distinction in the legitimacy of defendants' privacy expectation here. In this respect, the government's argument that apartment hallways are never areas in which one can have a legitimate expectation of privacy fails to note the important principle that the Fourth Amendment protects people, not places. *See Katz,* 389 U.S. at 351, 88 S.Ct. 507.

Second, the government points out that in *Fluker,* the two apartments were located on the same floor whereas in this case the two apartments were on different floors. In *Fluker,* the government argues, dwellers in both apartments could have been notified of police presence by a knock at the outer door, at least in theory. The

**5.** The government also cites *United States v. Alatishe,* 616 F.Supp. 1406 (D.D.C.1985) and seems to imply that I am bound by that case and the *Perkins* case. Of course, these district court cases are persuasive authority, but they are not binding. Moreover, the *Alatishe* opinion may contain too few facts about the premises there to permit the government to draw a meaningful comparison to the dwelling here and to the legitimacy of these defendants'

expectation of privacy. We know that the building in *Alatishe* had at least two stories and at least three apartments in it; we do not know if it was actually taller with more apartments in it. We also know, though, that unlike the building in this case, its outer door entered into a common hallway that was some distance away from the apartment. *See id.* at 1413.

government speculates that in this case, a knock at the outer door might provide notice to dwellers in the first-floor apartment but not the second-floor apartment. The government argues that requiring police to knock and announce at the outer door would provide to the first-floor dwellers earlier notice of a police presence than it would to the second-floor dwellers.

The problem with this argument is that police officers must take the home they wish to enter as they find it. It is always possible that residents of a two-story, single-family home will not hear police announcing their presence if the residents happen to be on the second floor when the police arrive. If there is no answer to a police announcement after a while, police will be allowed to enter the home by force as always. There is no basis for treating second-floor tenants of a two-unit dwelling like the one in this case differently from residents of a two-story, single-family home who are clearly entitled to a knock at their first-floor door.

Third, the government argues that a decision requiring police to knock at the outer door of a dwelling like this will place an undue burden on law enforcement. According to the government, the police hereafter would have to be aware of the nature of every house into which they seek access, to count the number of residents in it, and to measure the distance between outer and inner doors. That overstates the import of this decision. Further, any added burden on law enforcement is not an unreasonable one. At the outset, I emphasize that this ruling is dictated by the specific facts of this case. This opinion does not support the general proposition that police are required to knock at the

outer door to any apartment complex. It recognizes that greater police diligence may be required where the police can reasonably be expected to know that there is a very small number of units within a residential building, where they are unclear how many other residents are living in the building, and where they are unclear whether the public has access to the area in the building behind the entrance door.

Where there are sufficient indicia that the inhabitants could have a reasonable expectation of privacy in the entryway directly behind the outer door, the police then have at least two options. They can knock and announce their presence at the outer door, or they can seek additional information about the building to determine if the entryway is open to the public in such a way as would defeat a reasonable resident's expectation that "uninvited and unauthorized persons will not intrude into [it]." *Lyons,* 706 F.2d at 325. If these circumstances are present, forced entry may be warranted; if they are not, forced entry may not be warranted, absent exigent circumstances.[6] In other search and seizure contexts, courts routinely charge law enforcement with the responsibility of obtaining enough information to act in a reasonable fashion. *See, e.g., United States v. Whitfield,* 939 F.2d 1071, 1074–75 (D.C.Cir.1991) (stating that FBI agents did not have enough information on which to base their determination that the defendant's mother had authority to give consent to search the defendant's room and that the search was thus invalid). It is reasonable to require law enforcement to obtain additional information in these circumstances as well.[7]

---

6.  This conclusion is supported by a plain reading of § 3109. It specifically includes a reference to outer doors in its text, thus bolstering the notion that the police may need to provide justification for failing to knock and announce their presence and authority at an outer door in at least some circumstances. *See* 18 U.S.C. § 3109.

7.  The government also argues that the defendants' position would create a rule by which tenants in lower apartments would be entitled to a "two knock and announce rule"—once at the outer door and once at the inner door. However, in this particular case, defendants would not have been entitled to a second knock and announce at the inner door, as the requirement that the police make their pres-

Fourth, the government distinguishes and discounts *Fluker.* There, the government argues, the police descended a narrow stairway out of a public area into a private area to get to the outer door, while in this case, the outer door was located at ground level in a public area. (Government's Opp'n to Mot. Suppress Tangible Evid. at 7.) The evidence shows that the outer door of 1837 Kendall is set back from the public sidewalk by several feet, and that to reach the outer door one must ascend three stone steps. (Def.'s Ex. 1.) To get to the steps, one must pass through the entryway of a chain link fence erected across the front of the property. (*Id.*)

I am not convinced that this situation presents much less of an appearance of privacy than do the facts described in *Fluker.* Nevertheless, the issue here is not whether the defendants had a reasonable expectation of privacy in the outer door or the area leading up to it, but whether they had a reasonable expectation of privacy in what lay behind it. That privacy interest is not defeated by the fact that the door dividing the world from the entryway may or may not have bordered on public domain.

Finally, the government argues that the court in *Fluker* improperly speculated that a knock on the outer door would have been heard by the defendants in their respective apartments. Here, the government argues, there is no evidence in the record to show that the defendants would have heard the police had they chosen to knock and announce at the outer door.

The risk of inaudibility puts the police in no different position than they are in when knocking at anyone's front door. There is always the possibility that the occupants will be in a distant room or sleeping such that they will not hear the police at the door. That is why the police are allowed to force entry if there is not a timely response. Notwithstanding that, the record does show that a knock at the outer door at 1837 Kendall can be heard by

occupants of apartment number one. (Tr. at 64 (on visit to the building, investigator knocked on outer door and a defendant came to the door and admitted her).)

As a fallback position, the government argues that even if the police were required to knock and announce at the outer door, exigent circumstances excused that requirement. The police had information that Drummond possessed drugs and had been packaging those drugs at his apartment 72 hours prior to the arrival of the police. The government states that this knowledge was sufficient to presume that the defendant would have tried to destroy evidence if the police had announced themselves at the outer door.

The government's position seems to be that if a warrant is issued to search a home for drugs based on information that drugs for sale are present in that home, then the police are excused from the knock and announce rule. That standard is too broad and would "allow[ ] the exception to swallow the rule." *Florida v. J.L.,* ⸻ U.S. ⸻, 120 S.Ct. 1375, 1379–1380, 146 L.Ed.2d 254 (2000). In any event, the Supreme Court explicitly rejected such a blanket exception. *See Richards,* 520 U.S. at 394–95, 117 S.Ct. 1416. Moreover, cases finding that the knock and announce requirement is excused by exigent circumstances consistently describe some additional, identifiable factor based upon which reasonable police officers could have believed that evidence was in danger of being destroyed. *See id.* at 388 and 395, 117 S.Ct. 1416 (approving no-knock forced entry during execution of a search warrant for drugs where defendant opened his door, saw the police, and immediately slammed the door closed); *United States v. Bonner,* 874 F.2d 822, 825 & n. 5 (D.C.Cir.1989) (finding no knock and announce violation where police forced entry during execution of a warrant based on reliable informant's tip that cocaine was being sold in apartment and where police

ence, authority, and purpose known would

already have been fulfilled at the outer door.

heard footsteps running from the door after knocking and announcing); *United States v. James*, 764 F.2d 885, 888 (D.C.Cir.1985) (finding no knock and announce violation where police executing a warrant for drugs knocked, announced, and immediately forced entry upon hearing someone running down the back stairs); *Masiello v. United States*, 317 F.2d 121, 122 (D.C.Cir.1963) (involving "rustling" noises heard during execution of warrant at suspected gambling site consistent with burning of flash-paper known to be used by gamblers); *Rodriguez*, 663 F.Supp. at 588 ("In every case in which the courts have invoked the exigent circumstances exception, the police have testified that they had some specific and immediately ascertainable reason for fearing the loss of the desired evidence"). The government offers no such facts to indicate that there were exigent circumstances beyond their information that Drummond had drugs in the apartment. In the absence of any such specific description here, I will not assume that any exigent circumstances existed.

To summarize, I find that the defendants had a reasonable expectation of privacy in the area inside of the outer door of 1837 Kendall. The Constitution and § 3109 require that the police knock and announce their presence and authority at that door before entering to execute a search warrant. Because this was not done, all physical evidence seized as a result of the search following that entry must be suppressed.

**B. Inner Door**

██ If defendants had possessed no reasonable expectation of privacy in the entryway to proscribe a no-knock, forced entry at the outer door, they nevertheless would have been entitled to have the police properly knock and announce at the inner door. That did not occur here. While the police did knock and announce at the inner door, Officer Lovely testified that their entry into the apartment after that announcement was *immediate*, leaving no time for the residents to comply with the requirement that they allow the police access to the apartment. (Tr. at 27.) The failure to wait a sufficient amount of time to infer constructive refusal independently requires suppression of the physical evidence seized.

Nor is there sufficient evidence that exigent circumstances excused the required wait at that point. It is true that Officer Lovely testified at the motions hearing about hearing a toilet flush. (*Id.* at 26.) Her testimony indicates, however, that the police heard the toilet flush only after they entered the apartment. (*Id.*) No one testified that the police dispensed with the required wait *because* the sound of a flushing toilet triggered fear that drugs were being destroyed. No other testimony was offered to support a fair inference that the police were legitimately concerned about the destruction of evidence. Therefore, no exigent circumstances exception to the knock and announce rule applied at the inner door. As an independent ground, then, the tangible evidence seized at 1837 Kendall must be suppressed because there was not a proper knock and announce at the inner door.

**IV. Conclusion**

In summary, the physical evidence seized as a result of the search conducted at 1837 Kendall on December 18, 1999 must be suppressed on two independent grounds. First, the defendants had a legitimate expectation of privacy in the small entryway behind the outer door of that building. The Fourth Amendment and § 3109, then, required police to knock and announce their presence at that outer door. They did not do so. Second, the knock and announce that did occur at the inner apartment door was ineffective and did not make up for the prior absence of a knock and announce at the outer door. The police pushed open the apartment door immediately after announcing their presence without pausing to allow the de-

fendants time to admit the officers to the apartment or to allow the police time to infer constructive refusal by the defendants. The defendants' motion to suppress the tangible evidence must be granted. An appropriate order has been issued.