# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2312

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Apolonio Moreno, also known as Polo, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: December 16, 1999
Filed: June 27, 2000

_____

Before McMILLIAN, JOHN R. GIBSON, and MAGILL, Circuit Judges.

_____

MAGILL, Circuit Judge.

On February 12, 1997, Apolonio Moreno was charged, in a superseding indictment, with five counts: (1) possession with intent to distribute marijuana; (2) possession with intent to distribute amphetamine; (3) possession with intent to distribute cocaine; (4) criminal forfeiture; and (5) conspiracy to possess with intent to distribute cocaine, methamphetamine, amphetamine, and marijuana. On December 17,

1997, the district court[1] rejected Moreno's motion to suppress evidence seized at 5831 Miami Street, 3923 S Street and 3811 Q Street, Omaha, Nebraska.  On November 12, 1998, a jury returned a guilty verdict on all five counts.  Moreno appeals the denial of his motion to suppress and further alleges a <u>Batson</u> violation occurred during voir dire. We AFFIRM.

## I.

On September 12, 1996, at 2:00 p.m., the Omaha Police Department, accompanied by two F.B.I. officers, went to 5831 Miami Street to execute a valid knock and announce search warrant.  Finding Moreno in the front yard of 5831 Miami Street, the officers took him into custody prior to serving the warrant.  An officer knocked on the front door of 5831 Miami Street announcing, "Police – search warrant – we demand entry."  The unlocked door swung open from the force of the knocking, and the officer then entered without waiting for a response to his knock.  The eventual search of 5831 Miami Street yielded 211 kilograms of marijuana, 21 grams of cocaine, and 4 firearms, most of which was hidden in coolers and false bricks in the basement. Officers then received permission from Moreno to search his business property at 3811 Q Street and his residence at 3923 S Street.  The officers recovered $14,000, two coolers similar to the ones at 5831 Miami Street and two garbage bags containing marijuana residue from 3923 S Street.  The officers further recovered one buried cooler and a Chevrolet Suburban from 3811 Q Street.  The Chevrolet Suburban had a false gas tank containing amphetamine and a spare tire concealing nine kilograms of marijuana.

## II.

Moreno alleges the search of 5831 Miami Street violated his Fourth Amendment

---

[1]The Honorable Thomas M. Shanahan, United States District Judge for the District of Nebraska.

rights because one of the officers did not wait for a response to knocking on the front door. When federal officers assist in a search, that search and its validity is controlled by 18 U.S.C. § 3109. See United States v. Baker, 16 F.3d 854, 856 (8th Cir. 1994). An "officer may break open any outer or inner door . . . to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance . . . in the execution of the warrant." 18 U.S.C. § 3109. Thus, if there is no breaking to gain entry, § 3109 has not been violated.

The issue before us is whether a breaking has occurred when an officer knocks on a door with a normal amount of force and that knocking causes the door to swing open. Only the District of Columbia Circuit has examined the knock and announce requirement under these circumstances. See United States v. Kemp, 12 F.3d 1140 (D.C. Cir. 1994). In Kemp, a Metropolitan Police officer knocked in a normal manner on Kemp's door, which then swung open from the force of the officer's knocking. See id. at 1141. As the door swung open, the officer could clearly see the occupants of the apartment, and proceeded to enter without waiting for a response. See id. In holding the resulting search valid, the D.C. Circuit held there was no breaking as defined by § 3109 "where (1) the officer used only the force ordinarily used to knock upon, not to knock down, a door; and (2) an occupant is made aware of the officer's presence and purpose before the officer enters the premises." Id. The D.C. Circuit found all three purposes of § 3109, (1) reducing the potential for violence, (2) preventing unnecessary destruction of private property, and (3) showing respect of the individual's privacy interests, were met under these circumstances. See id. at 1142.

In the present case, all three purposes for § 3109 are met. First, the risk of violence would not have been reduced if the officer, who had already announced his presence and purpose, had continued to stand in an open doorway waiting for a response. Second, there was no damage to the door from the officer's knocking. Third, the property owner was already in custody and knew a search of his property was imminent. Any delay prior to entering after the owner already has knowledge of the

search does nothing to protect his privacy interests. We now hold that when a door swings open when an officer knocks on it with a normal amount of force and the owner has been made aware that his property is being searched no breaking has occurred under 18 U.S.C. § 3109.

### III.

Moreno claims the prosecutor's use of a peremptory challenge to strike Juror 96, a Mexican-American, was a <u>Batson</u> violation. <u>See</u> <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986). A defendant can establish that a prima facie <u>Batson</u> case by demonstrating 1) he is a member of a cognizable racial group, 2) the juror is of the same racial group, and 3) the relevant circumstances of the voir dire support an inference of discriminatory purpose. <u>See</u> <u>id.</u> at 96. After a prima facie case has been made out, the burden shifts to the prosecution to state a racially neutral reason for striking the juror. <u>See</u> <u>id.</u> at 97.

Moreno is Mexican-American, as is Juror 96, thus the first two prongs of a prima facie <u>Batson</u> case are met. However, the evidence from the voir dire does not suggest a discriminatory purpose to striking of Juror 96. Counsel for Moreno made a <u>Batson</u> objection when the prosecutor exercised a peremptory challenge to strike Juror 96. The district court then inquired as to why the prosecutor struck Juror 96. The prosecutor claimed Juror 96 was rejected because she admitted having a great deal of past contact with drugs. Another juror, who was not struck by the prosecution, admitted contact with drugs, but vehemently rejected drugs because she had witnessed the violence associated with the drug trade. Juror 96 had expressed no such reservations about drugs. Although the prosecution did not yet have the burden of stating a racially neutral reason for striking a juror, such a reason has been provided. Striking a potential juror for contact with drugs has been recognized as race neutral in this Circuit. <u>See</u> <u>United States v. Gordon</u>, 974 F.2d 97, 100 (8th Cir. 1992).

Additionally, another Hispanic-American did serve on the jury, although she was

apparently not Mexican-American. The presence of a Hispanic-American on the jury further reinforces that the striking of Juror 96 was not done for racial motives. See United States v. Fuller, 887 F.2d 144, 146-47 (8th Cir. 1989). Not only did Moreno not make out a prima facie case, but the prosecution stated a racially neutral reason for rejecting Juror 96, thus the prosecutor could not have committed a Batson violation.

## IV.

Moreno throws a further laundry list of supposed violations at the Court, including (1) his consent to the searches of 3923 S Street and 3811 Q Street was given only under duress, (2) insufficient evidence to sustain the forfeiture of 3811 Q Street, (3) insufficient evidence to sustain the forfeiture of the cash, (4) insufficient legal description of 3811 Q Street, (5) a two point sentencing enhancement for obstruction of justice, and (6) insufficient evidence as to the type and amount of illegal drugs possessed by Moreno for sentencing purposes. These arguments are without merit and we affirm the judgement as to these issues for the reasons stated by the district court. See 8th Cir. R. 47B.

## V.

For the foregoing reasons, we affirm the district court's findings.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-5-