# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3631

_____

|  |  |  |
|---|---|---|
| United States of America | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| James Ray Mendoza | * | District of Minnesota |
| | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: May 18, 2001
Filed: February 21, 2002 (corrected 2/28/02)

_____

Before MORRIS SHEPPARD ARNOLD and BYE, Circuit Judges, and GAITAN,[1] District Judge.

GAITAN, District Judge

This case presents the issues of whether a resident of a duplex possesses a legitimate privacy interest in the common entry vestibule, and whether law

_____

[1]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri, sitting by designation.

enforcement agents, who possess a warrant and announce their presence and purpose, must knock when the door to the dwelling has been removed from its hinges. Appellant, the United States, appeals from the District Court ruling which suppressed the evidence retrieved from James Mendoza's home on the grounds that the search was unreasonable.

Several days prior to June 5, 2000, the Minneapolis Police Department received a tip from a confidential reliable informant that Mendoza possessed a pound of heroin at his home, the lower unit, 1021 19th Avenue Northeast, Minneapolis, Minnesota. Mendoza apparently showed the heroin to the informant when he took a pad-locked duffle bag from under his bed and opened it to reveal the drugs. Officers checked with the utility company and learned that the utilities to the lower unit of the duplex were in Mendoza's name. In addition, the officers obtained a photograph of Mendoza from prior arrests and showed it to the informant, who confirmed Mendoza was the individual in possession of the heroin. The officers sought and obtained a warrant based upon the tip.

Mendoza's residence is a multifamily dwelling (a "duplex") with an upper and lower unit. There is one single main door located on the right front of the home. The door has peep hole, small knocker and a lock, which was not latched at the time of entry. To the left of the door there are two mailboxes. The warrant indicated in three places that the dwelling contained two residences, a lower and an upper unit, and that Mendoza was located in the lower unit.

On June 5, 2000, at around 6:30 p.m., approximately six to eight police officers arrived at Mendoza's home. The officers were wearing raid gear which consisted of vests and jackets with "Police" on the front. An adult and Mendoza's son, who was thirteen, and his son's friend, fourteen, among others, were talking in the front yard. The officers approached the house and were shouting "Police!", as were the individuals in the yard.

The officers entered the common door into an open vestibule while shouting "Police!" Upon entering the vestibule the officers saw Mendoza's doorway to the left and stairs directly in front of them, which led to the upper unit. Mendoza's paramour, Ms. Brandon, resided in the upper unit. Mendoza's door was off the hinges completely and the apartment was open to the vestibule. The officers then shouted "Police! Warrant!" and entered Mendoza's residence where they conducted a protective sweep throughout the unit. They found Mendoza repairing the bathroom and brought him to the living room.

Mendoza was charged by indictment on June 20, 2000. The original two-count indictment alleged the defendant possessed methamphetamine and heroin with the intent to distribute, in violation of 21 U.S.C. § 841. A superseding indictment was filed by the United States on September 7, 2000 to conform to the charges of the Supreme Court decision Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). This two-count indictment alleged that Mendoza possessed methamphetamine in excess of 50 grams with the intent to distribute 100 grams of heroin, both in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B).

On August 11, 2000, Mendoza moved the court for an order suppressing the evidence obtained in the search and seizure of the his home. After a hearing, the United States Magistrate Judge, Jonathan Lebedoff, issued a report and recommendation that advised the suppression of the evidence seized as a result of the search of defendant's apartment. The report and recommendation concluded that the officers should have knocked on the front door of the duplex and that once the officers entered the common vestibule area and found the door off the hinges, they should have knocked a second time on the lower unit's door frame. The District Court adopted the findings of the report and recommendation and ordered the suppression of the evidence.

# I.      Discussion

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. When examining if a search is reasonable, courts consider "all the circumstances of the particular governmental invasion of a citizen's personal security." Terry v. Ohio, 392 U.S. 1, 19, 88 S.Ct. 1868, 20 L.Ed 889 (1968). Here, Mendoza asserts two bases for suppressing the evidence adduced as a result of the search: (1) that the government violated his Fourth Amendment rights when they entered the main door of the duplex without knocking; and (2) the officers, once inside the duplex vestibule, should have knocked on the door jamb before entering his front door.

## A.      The First Door

Mendoza maintains he had a constitutionally protected interest of privacy in the first door, which opened into the duplex vestibule. He asserts, moreover, this door was *his* front door and that the vestibule constituted his "home" for purposes of Fourth Amendment analysis. Accordingly, he reasons, the officers should have knocked on that door and announced their presence and purpose there, instead of entering that door and approaching the interior doorway.

The threshold inquiry is whether Mendoza had a legitimate expectation of privacy in the common area entryway of the duplex, which would have required the officers to knock and announce their presence. "[T]he person challenging the search has the burden of showing both a subjective expectation of privacy and that the expectation is objectively reasonable; that is, one that society is willing to accept." United States v. McCaster, 193 F.3d 930, 933 (8th Cir. 1999); accord Minnesota v. Olson, 495 U.S. 91, 96-97, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990) (recognizing the reasonable expectation of privacy in a dwelling for an overnight guest); Rakas v.

Illinois, 439 U.S. 128, 130 n. 1, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). Several factors have been identified as relevant to this showing: "whether the party has a possessory interest in the things seized or the place searched; whether the party can exclude others from that place; whether the party took precautions to maintain the privacy; and whether the party had a key to the premises." Id. (citations omitted).

In applying this test, we have repeatedly held that tenants of multifamily dwellings have no legitimate expectation of privacy in common or shared areas. See McCaster, 193 F.3d 930 (defendant did not have a legitimate expectation of privacy in a duplex hallway's closet); United States v. McGrane, 746 F.2d 632 (8th Cir. 1999) (no legitimate expectation of privacy in a basement storage locker in a multifamily dwelling, to which other residents had access); United States v. Eisler, 657 F.2d 814 (8th Cir. 1977) (no legitimate expectation of privacy in a conversation that took place in an apartment building hallway). Mendoza urges this case is distinguishable from our prior decisions because he shared the duplex with "his children, girlfriend and her children." Specifically, he contends "the occupants of the duplex treated the upper unit, the lower unit, and the vestibule as communal space." In finding that Mendoza had a legitimate expectation of privacy, the District Court focused only upon his subjective expectation and not whether that expectation was objectively reasonable. To amount to a protectable expectation of privacy, however, the expectation must be tested for reasonableness.

The factors applied to examine if a subjective expectation is objectively reasonable relate to both property interests, and whether the individual claiming the right took measures to protect those interests. In the instant case, Mendoza did nothing that would lead the officers to believe he had a protectable interest in the common area of his duplex. He made no efforts to secure the outer door. Moreover, because the door was not latched and there remained two mailboxes to its left, there was no signal to the officers that knocking on the outer door would have been

necessary.[2]  As for any property interest in the common entry door and vestibule, Mendoza had none which would mandate protection.  For example, it is doubtful the landlord would have allowed Mendoza to sublet the vestibule. It is also unlikely that Mendoza could have excluded individuals from Ms. Brandon's unit. The only support he provides that he had an interest in the upper unit is that his young daughter ran up to it, and that his door was off its hinges. It was the District Court that surmised the missing door was to facilitate free movement, and that extrapolation creates more questions than answers.  What if Ms. Brandon grew tired of Mendoza, could she have excluded him from her unit? What if a delivery person wanted to take a package to Ms. Brandon's door–could Mendoza have barred his entry?  What about Ms. Brandon's door–was it completely off the hinges–did she want to facilitate free movement?  What may be even more disconcerting, however, is Mendoza's contradiction within his brief.  After asserting in his statement of facts that "the door to the lower portion of the duplex was off the hinges due to repairs . . .," he defends his subjective belief of one unified living space by representing that the door was off its hinges to facilitate free movement, thus adding a tint of disingenuousness to his argument.

## B.     The Second Door

We must now examine whether the officers were required to knock before entering Mendoza's unit, even though there was no door.  The common law requirement that police officers knock and announce their presence before entering a dwelling, plays a part in Fourth Amendment reasonableness determinations. <u>Wilson v. Arkansas</u>, 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed. 967 (1995); <u>see</u> <u>also</u> <u>Miller v. United States</u>, 357 U.S. 301, 313, 78 S.Ct. 1190, 1198, 2 L.Ed. 1332 (1958) (the

---

[2] If the Court were to be persuaded by Mendoza's subjective expectation argument, it would mean that not only would the officers have been able to search Mendoza's unit, but they also would have been able to search Ms. Brandon's residence. We are not prepared to waive Ms. Brandon's rights on account of her boyfriend's subjective belief.

common law principle of "knock and announce" is "embedded in Anglo-American law").[3] There are exceptions to the knock and announce rule where police "have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." Id. at 643 (citing Richards v. Wisconsin, 520 U.S. 385, 394, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997), and United States v. Weeks, 160 F.3d 1210, 1213 (8th Cir. 1998)). Here, the government has not charged that any exigent circumstances existed, nor has it argued that knocking would have been dangerous or would have lead to the destruction of evidence. This leaves the futility exception.

Although this Court has not squarely addressed the issue of whether knocking is required when the door is open, or in this case, where there is no door, most circuits courts deciding the issue have concluded when the door is open, the rule is vitiated. See United States v. Johns, 466 F.2d 1364 (5th Cir. 1972) (FBI agents, wearing "FBI" armbands, were not required to knock or announce upon entry of an open door when they witnessed an individual emerge from the door, turn around and go back in the building where they suspected illegal gambling); United States v. Lopez, 475 F.2d 537 (7th Cir.), cert. denied, 414 U.S. 839 (1973) (Federal Agents entry into the open

---

[3] Section 3109, "the knock and announce" statute governs when there is "significant federal involvement" and provides:

> The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in execution of the warrant.

18 U.S.C. § 3109; Sabbath v. United States, 391 U.S. 585, 588, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968); see United States v. Murphy, 69 F.3d 237, 242 (8th Cir. 1995). This statute codifies the common law rule. Therefore, cases construing § 3109 are relevant to our analysis, even though only state officers executed the warrant.

door of a motel room after probable cause was established and as defendants opened the door to leave, did not require knocking) United States v. Vargas, 436 F.2d 1280 (9th Cir. 1971) ("the thrust of § 3109 . . . is aimed at the closed or locked door."); United States v. Remigio, 767 F.2d 730 (10th Cir. 1985) (finding no violation of the knock and announce rule when officers enter an open door); United States v. Valenzuela, 596 F.2d 1361 (9th Cir. 1979) (same).

In making the determination of whether the Fourth Amendment has been violated by a failure to knock and announce, we must remember reasonableness is our polestar. Underlying the knock and announce requirement is notice, and here, the officers announced their presence and were conspicuously dressed in police riot gear. Further, the inhabitants who were outside were shouting "Police!" Given the twin auditory function of announcing ("Police! Warrant!") and knocking ("Bang-bang-bang") it belies common sense to think officers should be forced to comply with formalistic rules when the circumstances direct otherwise. See Richards v. Wisconsin, 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed. 615 (1997) ("the flexible requirement of reasonableness should not be read to mandate a rigid rule of announcement that ignores countervailing law enforcement interests.") (internal quotations and citations omitted). In fact, it is difficult to imagine a case where knocking could be more futile than the one at hand—where the door was not just open, but off its hinges.

In United States v. Moreno, 217 F.3d 592 (8th Cir. 2000) we looked at the purposes of the knock and announce rule which include: 1) the potential for violence; 2) preventing unnecessary destruction of private property; and 3) showing respect for the individual's privacy interests. Id. at 594 (citing United States v. Kemp, 12 F.3d 1140 (D.C. Cir. 1994)). When the officers entered Mendoza's they were acting consistently with these policies. Because they announced their presence and stated their purpose, the potential for violence was diminished. In addition, there was no door to break down, and as such, there was no unnecessary destruction of private property. Finally, the officers made a pre-entry announcement, thus giving Mendoza

notice of their presence. In short, the underlying reasons for the knock and announce rule were met, and the entry was reasonable.

Accordingly, for the foregoing reasons, we reverse the judgment of the District Court.

MORRIS SHEPPARD ARNOLD, Circuit Judge, concurring.

I concur in all of the court's opinion except the reasoning in Part I. A., and I concur in the result reached in that part for the reasons that follow.

When the police officers arrived at Mr. Mendoza's house, they had received certain information that it was being used as a duplex, they knew that there was separate utility service for each of its two floors, and they observed that there were two mailboxes attached to it. In those circumstances, the officers were entitled to believe that a common, public area lay behind the front door of the house in which Mr. Mendoza lived and thus that they did not need to knock or request permission before entering it.

I therefore suggest that a determination of what the actual living arrangements were inside the house is not necessary to a decision in this case. It is a familiar general principle that the fourth amendment is not violated when officers act on what they reasonably believe to be the facts, if the facts that they reasonably believe would have rendered their action constitutional had the facts been true. For instance, the Supreme Court held in an analogous situation that the "Constitution is no more violated when officers enter without a warrant because they reasonably (though erroneously) believe that the person who has consented to their entry is a resident of the premises, than it is violated when they enter without a warrant because they reasonably (though erroneously) believe they are in pursuit of a violent felon who is

about to escape." *Illinois v. Rodriguez*, 497 U.S. 177, 186 (1990). The same principle serves to validate the officers' entry into the residence in this case: They had evidence that supported a reasonable belief that a common, public area lay behind the front door of Mr. Mendoza's house, and thus the officers were justified in believing that they could enter that door without knocking or without permission from the occupants of that house. *See also Maryland v. Garrison*, 480 U.S. 79, 86-89 (1987); *Brinegar v. United States*, 338 U.S. 160, 176 (1949).

I therefore concur in the judgment in this case.

BYE, Circuit Judge, dissenting.

I am disturbed our Fourth Amendment jurisprudence allows us to find the execution of this search warrant constitutionally permissible. The reasonableness of a search or seizure is "measured in objective terms by examining the totality of the circumstances." Ohio v. Robinette, 519 U.S. 33, 39 (1996). When I examine the totality of the circumstances in this case, I see little reason in the officers' conduct. Despite the warrant's knock and announce limitation, it is apparent the officers simply executed this warrant as a no-knock drug raid.

Six to eight officers executed the warrant to search Mendoza's home. Despite the lack of facts that would have allowed the officers to obtain a no-knock warrant, all the officers wore raid gear, and at least some wore masks. In their rush on Mendoza's home, the officers somehow bloodied the nose of one of his children, who was playing outside. Once inside the home, the officers forced Mendoza's eleven-year-old daughter to the floor at gun point and handcuffed her. The officers found Mendoza inside performing home repairs, still unaware of a police presence in his home. Mendoza testified an officer told him to "freeze, mother fucker, or I'll blow your fucking head off." The officers then placed Mendoza in handcuffs. All this

occurred before the officers had searched the residence, or had found contraband in the home.

The officers concede no exigent circumstances arose during the execution of the warrant. Yet the officers admit they immediately passed through two doorways after merely announcing their presence. In so doing, they wholly ignored a necessary component of the common law knock and announce rule, which requires officers to wait a reasonable time for an occupant to allow or refuse entry. See Garza v. State, 619 N.W.2d 573, 576 (Minn. Ct. App. 2000), rev'd on other grounds, 632 N.W.2d 633 (Minn. 2001); see also United States v. Gamble, 198 F.3d 672, 673 (8th Cir. 1999).

The "purpose of the knock-and-announce rule is to prevent the unnecessary destruction of property and mistaken entry into the wrong premises, protect against unnecessary shock and embarrassment and decrease the potential for a violent response when a search is executed." Garza v. State, 632 N.W.2d 633, 639 (Minn. 2001). I fail to see how the purpose of the knock and announce rule was served by the manner in which police executed this warrant.

The lead opinion excuses the officers' failure to comply with the knock and announce rule at the first door by concluding Mendoza's expectation of privacy in the vestibule behind the first door was not objectively reasonable. The concurring opinion concludes the officers had a reasonable belief that a common, public area lay behind the first door. I disagree with both conclusions.

## I.     The Lead Opinion

We have, on several occasions, addressed whether a person has an objectively reasonable expectation of privacy in the common area of a multiple-unit dwelling. See United States v. McCaster, 193 F.3d 930 (8th Cir. 1999) (involving a hall closet shared with the other tenant of a duplex); United States v. McGrane, 746 F.2d 632 (8th Cir. 1984) (involving a storage locker in the basement of a four-unit apartment building); United States v. Luschen, 614 F.2d 1164 (8th Cir. 1980) (involving the second floor landing in a multiple-unit security building); United States v. Eisler, 567 F.2d 814 (8th Cir. 1977) (involving a hallway in a multiple-unit apartment building).

I do not find any of these cases particularly helpful in analyzing the present dispute. None involved a violation of the knock and announce principle, and none involved a duplex where both occupants with access to the common area had the same interest in having intruders announce their presence before entering. Instead, I find persuasive two cases addressing facts more analogous to those found here, both of which found violations of the knock and announce principle.

United States v. Fluker, 543 F.2d 709 (9th Cir. 1976), involved a single-family home with two basement apartments. An outside stairway led to the basement. At the bottom of the stairway, a door (usually locked) opened to a small entry. Inside the small entry, two doorways opened to the basement apartments. The officers had a search warrant for one apartment, occupied by Willard Young. The officers entered the outer door without announcement, and once inside the small entry, encountered a partially open door to Young's apartment. The officers immediately entered the apartment with announcement, but without allowing the occupant a chance to allow or deny entry. Id. at 712.

After careful consideration, the Ninth Circuit concluded Young had an objectively reasonable expectation of privacy in the common entryway. First, the court noted the building contained only two apartments, and the occupants of the two apartments were the only persons with access to the small entry. "[T]he two lower-level tenants thus exercised considerably more control over access to that portion of the building than would be true in a multi-unit complex, and hence could reasonably be said to have a greater reasonable expectation of privacy than would be true of occupants of large apartment buildings." Id. at 716. Likewise, Mendoza's home contained just two units, occupied by Mendoza and his girlfriend. They were the only persons with access to the common vestibule. The district court found Mendoza's "duplex was regarded by the occupants as one house shared by two families, and the vestibule approximated a foyer of a single home." Appellant's Add. A-9.

Second, the Ninth Circuit noted the door to Young's apartment was "actually within reach" of the outer doorway: "Thus, a knock on the outer door might well have been audible in Young's apartment, and would not have been a useless gesture." Fluker, 543 F.2d at 716. Similarly, the doorway to Mendoza's unit was very close to the outer door. A knock on the outer door would likely have been audible to someone in the lower unit. This fact should have been known to the officers before entering the outer door. The house is very narrow. When approaching the home, the officers would have observed a window to the lower level unit just a few feet to the left of the outer door, indicating the inside door was even closer. See Appellee's App. 2.

Finally, the Ninth Circuit noted the inner door to Young's apartment was partially open when the officers broke down the outer door, "thus indicating that Young felt some degree of safety and privacy because of the existence of the outer, locked doorway." Fluker, 543 F.2d at 716. Similarly, Mendoza's inner door was not just partially open, but he had entirely removed the door from its hinges. This fact clearly supports Mendoza's subjective expectation of privacy in the vestibule, since the outer door served as the only barrier between his living quarters and the rest of the world. When coupled with the fact that the only other occupant of the duplex was

his girlfriend, Mendoza's subjective expectation of privacy is one society would accept as objectively reasonable.

In <u>United States v. Drummond</u>, 98 F. Supp. 2d 44 (D.D.C. 2000), the court addressed a dispute involving a duplex almost identical to the one involved here:

> The apartment is in a small, residential, two-story dwelling containing only two apartments--the defendants' first-floor apartment and an apartment upstairs. The outer door to the dwelling is opaque, with no windows allowing visitors to see into the space behind it. Two utility meters are mounted to the left of the outer door. There appears to be a mailbox directly to the right of the outer door. The outer door is hinged on the left. It opens into a small entryway landing at the base of the narrow staircase leading to the upstairs apartment. The landing's width barely exceeds that of the narrow staircase, and its depth is less than its width. The inner door to apartment one is immediately to the right of the landing.

<u>Id.</u> at 46 (internal references to the record deleted).

In <u>Drummond</u>, the police entered the outer door without announcement, and found the first-floor apartment's inner door partially open. The officers then announced themselves, but immediately entered the apartment without giving the occupants a chance to allow or deny entry. <u>Id.</u> The court concluded, in a thorough and well-reasoned opinion, that the apartment occupants "had a legitimate expectation of privacy in the entryway behind the outer door," <u>id.</u> at 49, and held the officers violated the knock and announce rule at the outer door. <u>See id.</u> at 53. In rejecting the government's argument that knocking at the outer door placed an undue burden on law enforcement, the court said

[t]his opinion does not support the general proposition that police are required to knock at the outer door to any apartment complex. It recognizes that greater police diligence may be required where the police can reasonably be expected to know that there is a very small number of units within a residential building, where they are unclear how many other residents are living in the building, and where they are unclear whether the public has access to the area in the building behind the entrance door.

Where there are sufficient indicia that the inhabitants could have a reasonable expectation of privacy in the entryway directly behind the outer door, the police then have at least two options. They can knock and announce their presence at the outer door, or they can seek additional information about the building to determine if the entryway is open to the public in such a way as would defeat a reasonable resident's expectation that uninvited and unauthorized persons will not intrude into it.

. . .

In other search and seizure contexts, courts routinely charge law enforcement with the responsibility of obtaining enough information to act in a reasonable fashion.

Id. at 51 (internal citations and quotations omitted).

The facts in this case are similar to those in Drummond. From the outside, the home appears to be a single-family home, not a duplex. The only two tenants of the duplex were boyfriend and girlfriend, and thus they shared a common interest in excluding the public from the common vestibule. The main door had a latch,[4] which

---

[4]The lead opinion concludes Mendoza did nothing to lead the officers to believe he had a privacy interest in the vestibule because "the door was not latched." The lead opinion is inconsistent with the facts found by the district court, which indicated "it is unclear whether the latch was secured." Appellant's Add. A-3. Moreover, since some of Mendoza's children were playing outside, I do not see how a failure to latch the door bears on the question of the objective

-15-

allowed both Mendoza and his girlfriend to control access to the vestibule. In addition, the outer door had a knocker and a peephole, both objective signals that all those within viewed the common vestibule as a private space.

Unlike our case, the upper apartment in <u>Drummond</u> was vacant, so only the tenants of the first-floor apartment had access to the small entryway behind the outer door. <u>Id.</u> at 46. But in <u>Drummond</u>, the police had a confidential informant (CI) who told police the front door to the first-floor apartment was sometimes left open. The police did not bother to determine whether the duplex had other residents. <u>Id.</u> at 46-47. Similarly, here the officers had a CI, and could have inquired about the duplex's other residents, the close relationship between the occupants of the lower and upper units, and the status of Mendoza's inner door.

In sum, under the facts and circumstances present in this case, I believe the defendant's subjective expectation of privacy in the vestibule was objectively reasonable.

## II.     The Concurring Opinion

Instead of focusing upon whether the defendant's subjective expectation of privacy in the vestibule was objectively reasonable, the concurring opinion concludes the officers were reasonable in believing a common, public area lay behind the front door. Although this argument has more force than the lead opinion, I still disagree. The facts known to the officers before entering the first door, coupled with the situation they encountered *after* entering the first door, should have led an objectively reasonable officer to conclude the vestibule was a part of the defendant's home.

---

reasonableness of Mendoza's expectation of privacy in the vestibule area.

The concurring opinion cites <u>Maryland v. Garrison</u>, 480 U.S. 79 (1980), which upheld a search warrant authorizing the search of the single apartment on the third floor of a building, even though the building actually contained two third-floor apartments. The officers uncovered illegal contraband after searching the wrong apartment without realizing their mistake. <u>Id.</u> at 80. The Supreme Court held the officers' execution of the warrant was reasonable because "the objective facts available to the officers at the time suggested no distinction between [the two apartments]." <u>Id.</u> at 88.

In <u>Garrison</u>, however, the Supreme Court also stated the officers "were required to discontinue the search of respondent's apartment as soon as they discovered that there were two separate units on the third floor and therefore were put on notice of the risk that they might be in a unit erroneously included within the terms of the warrant." <u>Id.</u> at 87; <u>see also</u> <u>Pray v. City of Sandusky</u>, 49 F.3d 1154, 1159 (6th Cir. 1995) (citing <u>Garrison</u> and holding the Fourth Amendment requires officers "to retreat as soon as they knew or reasonably should have known that there was a mistake" in executing a warrant); <u>Turner v. Sheriff of Marion County</u>, 94 F. Supp. 2d 966, 983 (S.D. Ind. 2000) ("Even if the initial entry into a residence results from an objectively reasonable mistake, the Fourth Amendment requires officers to retreat as soon as they discover or reasonably should discover their mistake").

When the officers arrived at Mendoza's home, they knew the home was being used as a duplex, and there were two mailboxes beside the front door. But they also encountered an outer door with a latch, a knocker, and a peephole. A knocker is a clear signal the occupants of the dwelling expected outsiders to knock at that door, not enter. In fact, other than a sign on the door which says "Knock, Do Not Enter," I cannot think of a more reasonably objective way to convey the message. In addition, the presence of a peephole clearly indicated the occupants wanted to see who was at the first door before allowing anyone to enter. Finally, the latch indicated the occupants of both units could bar entry to what lay behind the first door.

After the officers entered the first door, they saw Mendoza had entirely removed the inner door from its hinges. This left the first door as the only barrier between the lower unit and the world at large. It is objectively unreasonable to believe a person will completely remove the only barrier separating his home from a common, public area. In addition, the officers saw a seven-year-old child run from within the lower unit, through the vestibule, and up the stairs to the upper unit. Reasonable police officers would have known of their mistake under these circumstances, and realized they were already in Mendoza's home after entering the first door. Under Garrison, the officers were constitutionally required to retreat at that point.

Because I believe the officers violated the Fourth Amendment at the first door, I find it unnecessary to address whether the knock and announce rule applies to the second, open doorway. I respectfully dissent.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.