BEAM, Circuit Judge,
concurring and dissenting.
In this case, Jane Doe asserts an individual claim plus an additional claim as the class representative for “all secondary public school students who have started the seventh grade in the Little Rock School District (LRSD) as of the 1999— 2000 school year.” I concur in the result reached by the court in Doe’s individual claim but dissent from the court’s conclusions in the class claim. More specifically, I disagree with the court’s ruling, which enjoins LRSD from conducting “suspicion-less searches of [students’] persons and belongings” since “such searches violate the students’ fourth amendment rights because they unreasonably invade their legitimate expectations of privacy.” Ante at 351. I respectfully suggest that neither the facts stipulated by the parties nor applicable precedent support this conclusion.
At the outset, I question the certification of a class in this matter, notwithstanding the failure of LRSD to object. Initially, Doe asserted a claim contending that the LRSD policy was unconstitutional on its face and as applied to her. Upon motion of LRSD, the facial claim was dismissed and as noted in the first footnote of Doe’s opening brief, “[t]he constitutionality of the Policy, on its face, is not an issue in this appeal.”
In an amended complaint, Doe asserted the class claim, and argued that the action was “maintainable under either Rule 23(b)(2) or 23(b)(3), ... [but] would be best pursued under Rule 23(b)(2).” LRSD did not object, in essence permitting the reassertion of the previously dismissed facial claim. As a result, the validity of the class was never addressed by the trial court.
Many students at LRSD (and their parents) may and likely do support the implementation of the LRSD policy for personal security reasons. Since each of them is entitled, for whatever reason, to waive his or her Fourth Amendment rights, Rule 23(b) (either (2) or (3)) cannot be invoked in this case because Rule 23(a)(4) has not been fulfilled. Doe simply cannot “fairly and adequately protect the interests” of those members of the class who would not assert their rights. Fed.R.Civ.P. 23(a)(4); see, e.g., Horton v. Goose Creek Indep. Sch. Dist., 690 F.2d 470, 485-87 (5th Cir.1982) (addressing appropriate ways of dealing with intraclass antagonism).
But even if the interests of antagonistic class members were properly represented by Doe (or otherwise accounted for), the class claim fails for an even more important reason: Fourth Amendment rights are personal and may not be asserted vicariously. United States v. Monie, 907 F.2d 793, 794 (8th Cir.1990) (citing United States v. Nabors, 761 F.2d 465, 468 (8th Cir.1985)). And the existence of an expectation of privacy has a subjective facet. Oliver v. United States, 466 U.S. 170, 177-78, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984); United States v. Mendoza, 281 F.3d 712, 715 (8th Cir.), cert. denied 537 U.S. 1004, 123 S.Ct. 515, 154 L.Ed.2d 401 (2002).[1] *358 So, given the nature of these rights, there needs to be a determination that each member of the class has a legitimate expectation of privacy based upon the facts stipulated. United States v. Gomez, 16 F.3d 254, 256 (8th Cir.1994); United States v. Macklin, 902 F.2d 1320, 1330 (8th Cir.1990). This did not occur, nor could it have occurred given the evidence available. Thus, the district court’s dismissal of the purported class claim was correct.
I agree with almost every aspect of the court’s discussion of the law concerning diminished expectations of privacy enjoyed by students in connection with secondary school search policies. My quibble with the court involves the evidence presented and how the court evaluates it under established precedent. In my view, the facts stipulated' make Doe’s case extremely close, but in no way establish a class-wide violation.
The court correctly notes that a student’s expectation of privacy does not disappear within the framework of school searches. Vernonia School District 47J v. Acton, 515 U.S. 646, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995), Board of Education of Independent School District No. 92 v. Earls, 536 U.S. 822, 122 S.Ct. 2559, 153 L.Ed.2d 735 (2002), and this circuit’s later interpretations of these rulings confirm this notion. But those same cases make any expectation of privacy almost indiscernible under the facts of this case.
In my view, Vernonia and Earls appreciate the limited expectation of privacy, but allow a school to search if the search is not too intrusive, if the school’s concerns are immediate, and if the means employed to serve the school’s concerns serve that immediate concern. Obviously, this test is vague. After all, it is a balance with which we are dealing — an earnest effort to delineate the notion of reasonableness in the context of government action. Thus, a useful benchmark is prior cases that have applied this test.
It seems to me that the “nature of the intrusion” in this case was noticeably less intrusive than the extraction and testing of body fluids discussed in Earls and Vernonia and tends to support an affirmance of the district court. But it is the immediacy of the school’s concerns that I believe is misstated here. I agree with Judge Bowman’s opinion in Miller v. Wilkes, 172 F.3d 574 (8th Cir.1999) (now vacated because of Miller’s exodus from the subject school system). Judge Bowman, acknowledging Vemonia, states, “Drug and alcohol abuse in public schools is a serious social problem today in every part of the country. (In *359 deed, to the extent any party thinks it necessary to do so, we take judicial notice of that fact. See Fed.R.Evid. 201 (generally known fact).)” The same is true, I submit, with the dangers of weapons that may pose threats of bodily harm to members of the student body. And, in this case, the stipulated facts address that specific problem.
13. LRSD believes that the ability to randomly search students [sic], book bags, backpacks, purses and similar containers is necessary to discourage, and hopefully prevent, students from bringing weapons and drugs into LRSD’s secondary schools.
14. Since implementation of its search policy, LRSD has discovered and disciplined student [sic] for bringing weapons to school as small as razor blades. There have also been incidents in which students have attempted to use razor blades as weapons.
Doe v. Little Rock Sch. Dist., No. LR-C-99-386, Joint Stipulation of Facts (E.D.Ark. July 17, 2000). If the search was justified because of the school’s weaponry concerns, but merely incidentally detected drugs, there would be no Fourth Amendment issue. Accordingly, I believe that LRSD has amply demonstrated an immediate concern that justifies the intrusion upon each class member’s privacy interests. And I believe the random searches serve that concern by deterring possession.
Finally, although a close question on the stipulated facts and the evidence the district court was entitled to consider through judicial notice, I agree with the court’s analysis of Doe’s individual claim. The distinguishing feature to me is the police involvement in the fruits of Doe’s search. I do not see any evidence in the record showing that other class members suffered this sanction or that the school, as a matter of practice or policy, always turns the fruits over to police, although the policy allows them to do so.[2] In my view, this has a profound impact on the way in which we should view this case. Although I don’t believe this fact takes the case out of the Vemonia and Earls test for reasonableness — i.e., it does not make a warrant or probable cause necessary in a situation such as this, Cason v. Cook, 810 F.2d 188, 192 (8th Cir.1987) — I do believe it affects the bottom-line reasonableness inquiry. See id. at 193.
As noted by the court, in Vemonia and Earls the results of the searches at issue were never disclosed to law enforcement authorities. Nor were they disclosed in Miller. 172 F.3d at 579-80. Here they were, and a criminal prosecution ensued. By turning the fruits of its search over to police, the school reduced the extent to which it was acting under its “ ‘custodial and tutelary responsibility’ ” Earls, 536 U.S. at 830, 122 S.Ct. 2559 (quoting Vernonia, 515 U.S. at 656, 115 S.Ct. 2386), and instead, brought it much closer to acting in the investigatory role for which the probable-cause standard is intended. Id. at 828, 122 S.Ct. 2559. In other words, its “special needs,” Vernonia, 515 U.S. at 653, 115 S.Ct. 2386, became ordinary.
This was no small act. A school board’s members are quite sensitive to the objections of its electorate. And that electorate, given the focused responsibilities of the school board, is particularly observant of how the school treats students. Law enforcement, though a government actor that is subject to political pressure, is subject to the will of a different electorate. That electorate may be unversed in the *360 problems of LRSD or concerned with the numerous other problems with which its elected officials (e.g., sheriffs, chiefs of police, or county attorneys) must deal. Thus, political pressure is less likely to protect students from unreasonable searches through its impact on law enforcement, than it is through its impact on school governance. LRSD, by calling upon this other government actor, diminished the extent to which we could rely on political processes to keep the government in check and, thus, introduced the need for a particular level of constitutional limitation.
The diminished expectation of privacy was also not so diminished. It is one thing for a student to expect, and society to allow, a search that remains within the school walls. It is quite another to expect tolerance when those searches invoke the criminal justice system.[3]
Ironically, calling upon the police after random searches probably heightens the extent to which the searches serve a school’s immediate concern with deterrence and thereby may make other students safer. But it also brings into the picture notions of detection and criminal punishment — not-so-peculiar facets of police work — 'that make the student’s shepherd much more like the criminal’s.
On balance, I conclude that the school district’s search was unreasonable as to Doe. Thus, the declaratory judgment and injunction should issue on Doe’s behalf. If, however, LRSD conducts its searches without individualized suspicion and refrains from sharing the fruits thereof with the police, I believe its actions are fully constitutional. The class has shown no more than that here. In sum, I concur in the court’s reversal regarding Doe’s individual claim but would affirm the district court on the class claim.

. Unlike the court, I believe the student handbook affects this subjective facet of the expec *358 tation of privacy. While I generally agree that the government cannot "deprive its [citizens] of privacy expectations protected by the fourth amendment simply by announcing that the expectations will no longer be honored,” ante at 354, I do believe that an entity charged with "custodial and tutelary responsibilities,” Bd. of Educ. of Indep. Sch. Dist. No. 92 v. Earls, 536 U.S. 822, 830, 122 S.Ct. 2559, 153 L.Ed.2d 735 (2002) (quoting Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 656, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995)), can affect its subjects' expectations of privacy. As explained below, in the case of Doe individually, exceeding those responsibilities impacts the analysis and could give rise to a constitutional violation.
For this reason, I also do not believe contractual notions of waiver are applicable in the school setting. Rather, the handbook in a public school has a notice function to which voluntary participation in, for example, extracurricular activities is irrelevant. Thus, I don’t think the fact that students are subject to compulsory education really matters because "mutual consent” (sometimes evident on the student’s part by his voluntary participation) is unnecessary. And even if contractual notions of waiver were applicable, why, given the handbook's warning, does the student's voluntary use of a portable container not constitute a waiver?

. Again, the constitutionality of the policy as written is not at issue here.

. Relatedly, subjecting an individual to criminal sanction is an intrusive measure, though perhaps this does not make the search itself any more intrusive.