# United States Court of Appeals
### For the Eighth Circuit

_____

No. 18-2976

_____

United States of America

*Plaintiff - Appellee*

v.

Gabriel Sherrod

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: June 13, 2019
Filed: July 17, 2020

_____

Before GRUENDER, STRAS, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

Gabriel Sherrod challenges his conviction for being a felon in possession of a firearm and his 120 month sentence. He argues that police officers obtained evidence in violation of the Fourth Amendment's knock-and-announce rule and that his sentence is procedurally and substantively defective. We hold that the common law knock-and-

announce rule does not apply when officers enter an open door and that the officers' conduct was reasonable under the Fourth Amendment. Since we also find no error in Sherrod's sentence, we affirm.

## I.

On the evening of September 17, 2016, Sherrod's mother-in-law called Kansas City police and requested a welfare check on her grandchildren, who lived with Sherrod. She spoke with Officer Timothy Trost, who discovered Sherrod had an active felony arrest warrant. Sherrod's mother-in-law confirmed that Sherrod matched the warrant's description.

Officer Trost and two other officers tried to do the welfare check soon after 8 p.m., but all three were diverted to another call. Once that call was done, three more officers accompanied Officer Trost and the two original officers to Sherrod's residence. The six officers arrived around 10 p.m. and parked down the block from Sherrod's house. When they approached, a child, later identified as Sherrod's son, was taking out the trash. Officer Trost asked him if Sherrod was home. Without answering, the child immediately turned and walked toward the house. Officer Trost and two officers followed him to the front door, and three officers went to the back of the house.

Sherrod's son was unsure whether the officers followed him toward the home, but he "had a good feeling that they probably [did]." Suppression Hr'g Tr., D. Ct. Dkt. 49 at 74:22–75:3. He went into the house and left the door open. Officer Trost, in uniform, then stepped into the house and calmly said Sherrod's name. Sherrod stood up and fled. As Officer Trost gave chase and alerted the other officers, he noticed a cache of weapons near the entryway. The officers covering the back of the house arrested Sherrod outside.

With Sherrod in custody, Officer Trost returned to the front door to seize the guns. He then noticed another handgun by the couch, syringes filled with black liquid, a spoon with brown residue on it, and a scale. Officer Trost and the other officers then conducted a protective sweep of the home and located an additional firearm above a door frame. All items were in plain view.

Sherrod was charged with one count of being a felon in possession of a firearm. He moved to suppress the guns seized from his home, alleging that law enforcement violated the Fourth Amendment because they forced open his front door without first knocking and announcing their presence. The district court[1] denied this motion, finding that the front door was open and that the officers' entry into the home was reasonable. The court concluded that the officers "were not required to knock and announce their presence before entering the open door of the residence." D. Ct. Dkt. 56 at 8–9.

Sherrod was convicted at a bench trial after he stipulated to each element of the offense. His presentence investigation report assigned him a total offense level of 34, which included a two-level enhancement for obstruction of justice, and a criminal history category of V. The Guidelines recommended a sentence between 235 and 293 months, and the court sentenced him to the statutory maximum of 120 months. *See* 18 U.S.C. §§ 922(g)(1), 924(a)(2). Sherrod timely appealed the denial of his motion to suppress and his sentence.

---

[1]The Honorable Roseann A. Ketchmark, United States District Judge for the Western District of Missouri, adopting the report and recommendations of the Honorable Sarah W. Hays, United States Magistrate Judge for the Western District of Missouri.

II.

"A mixed standard of review applies to the denial of a motion to suppress evidence. We review the district court's findings of fact under the clearly erroneous standard, and the ultimate conclusion of whether the Fourth Amendment was violated is subject to *de novo* review." *United States v. Williams*, 777 F.3d 1013, 1015 (8th Cir. 2015). We affirm the district court's decision "unless it is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear a mistake was made." *United States v. Braden*, 844 F.3d 794, 799 (8th Cir. 2016) (citation omitted).

A.

Sherrod first claims the district court clearly erred when it found that "the child walked in without attempting to close the door." The court discounted the testimony of Sherrod, his son, and his ex-wife, Amy, who each testified that as the door was closing, an officer kicked it open, making a loud noise. D. Ct. Dkt. 56 at 3; *id.* at n.6. The court noted that Officer Trost's audio recorder picked up only the "faint creaking of door hinges," *id.*; *id.* at 8 n.15, and that the "audio does not support the testimony of [Sherrod's son], Amy Sherrod, or defendant Sherrod," *id.* Given the audio recording, which neither party suggests the court inaccurately described, we cannot say this was clear error.

Sherrod also claims that Officer Trost's post-incident statement that he "ke[pt] the door from closing" shows that the door was not left open. Sherrod Br. 19–20. The court acknowledged the statement but credited Officer Trost's testimony that he had used a poor choice of words and concluded "that the door to the residence was already open when the officers entered the residence." *Id.* (citing D. Ct. Dkt. 41, 66:17–25); *id.* at 5. On appeal, rather than pointing us to evidence that the court's factual findings are clearly erroneous, Sherrod asks us to overturn the court's credibility determinations,

which are "virtually unreviewable on appeal." *United States v. Coleman*, 909 F.3d 925, 929 (8th Cir. 2018) (citation omitted).

## B.

Sherrod next argues that the guns should be suppressed because Officer Trost violated the knock-and-announce rule before entering through the open door. Though we agree with Sherrod that the knock-and-announce rule generally "plays a part in Fourth Amendment reasonableness determinations," *United States v. Mendoza*, 281 F.3d 712, 716 (8th Cir. 2002) (citation omitted), we hold it does not apply when officers enter a home through an open door.

In evaluating the Fourth Amendment's protection against unreasonable searches and seizures, the Supreme Court has "looked to the traditional protections against unreasonable searches and seizures afforded by the common law at the time of the framing." *Wilson v. Arkansas*, 514 U.S. 927, 931 (1995). The Court observed that even though the common law "protected a man's house as 'his castle of defense and asylum,'" *id*. (quoting 3 W. Blackstone, Commentaries \* 288), it has been long recognized that "'when the King is party, the sheriff (if the doors be not open) may break the party's house, either to arrest him, or to do the execution of the King's process, if otherwise he cannot enter,'" *id*. (quoting *Semayne's Case*, 77 Eng. Rep. 194, 195 (K.B. 1603)). But the ability to *break open a door* is limited by "an important qualification" namely that "'before he breaks it, he ought to signify the cause of his coming, and to make request to open doors.'" *Wilson*, 514 U.S. at 931 (quoting *Semayne's Case*, 77 Eng. Rep. at 195–96). Thus, the Court had "no doubt that the reasonableness of a search of a dwelling may depend in part on whether law enforcement officers announced their presence and authority prior to entering." *Id*.

*Semayne's Case* also says that "[i]n all cases *when the door is open* the sheriff may enter the house, and do execut[e] at the suit of any subject, either of the body, or

-5-

of the goods." 77 Eng. Rep. at 197 (emphasis added). So, at common law the knock-and-announce rule hinged on whether the sheriff or bailiff confronted an open or closed door. *See id.*; *Hodges v. Marks*, 79 Eng. Rep. 414, 415 (K.B. 1615) (upholding an arrest after a bailiff entered a home through an open door and seized the arrestee); *see also Steagald v. United States*, 451 U.S. 204, 217 n.11 (1981) (observing at the common law "an open outer door was apparently regarded as the equivalent of a consent of the occupant for the constable to enter the home and conduct a search."). The Fourth Amendment does not require officers to knock and announce their presence before entering an open door.

The knock-and-announce rule's limited application to closed but not open doors makes sense in light of the rule's underlying purposes. The rule protects individuals from harm that may flow from an unannounced forced entry, protects property by allowing individuals to comply with commands, and also protects "those elements of privacy and dignity that can be destroyed by a sudden entrance." *Hudson v. Michigan*, 547 U.S. 586, 594 (2006); *see also Mendoza*, 281 F.3d at 717 (same). A closed door stands between officers and a home's occupants in a way that an open door obviously does not. Where a door is open officer and occupant each have increased visibility into and out of a home. This increased visibility not only eliminates a potential forced entry, it may also provide notice of an impending interaction—especially if officers are in uniform. And when a door is open this "especially private sphere" is exposed to any passerby. *See Florida v. Jardines*, 569 U.S. 1, 14 (2013) (Kagan, J., concurring). Requiring officers to adhere to the knock-and-announce rule when facing an open door would "force[] [officers] to comply with formalistic rules when the circumstances direct otherwise." *Mendoza*, 281 F.3d at 717.

Even though the knock-and-announce rule does not apply here, Officer Trost's conduct does not escape Fourth Amendment scrutiny. "The Fourth Amendment says nothing specific about formalities in exercising a warrant's authorization." *United States v. Banks*, 540 U.S. 31 (2003). Instead its "touchstone is reasonableness . . . .

-6-

measured in objective terms by examining the totality of the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 34 (1996) (citation omitted). Our job is to assess reasonableness case by case. *Banks*, 540 U.S. at 35–36.

Officer Trost entered Sherrod's home with a felony arrest warrant and a reasonable belief he was present, so we need only assess whether his entry was reasonable. *See Payton v. New York*, 445 U.S. 573, 602–03 (1980). Officer Trost and his fellow officers first encountered a child outside the house. When asked if his father was home, Sherrod's son turned toward the home, leading the district court to conclude that Officer Trost and the other officers then "had reason to believe" that Sherrod's son "was leading the officers to him." D. Ct. Dkt. 64 at 5. In uniform with his gun holstered, Officer Trost entered through the open door and in "a calm collected voice" said "Gabriel?" *Id.* at 3. Immediately, Officer Trost saw Sherrod stand up from a nearby couch and run toward the back of the house. On these facts, we conclude that a uniformed Officer Trost acted reasonably by following Sherrod's son through the open front door and immediately and calmly calling out Sherrod's name. *Cf. Mendoza*, 281 F.3d at 717 (finding officers reasonably entered an open door and provided the apartment's occupants notice when they were "conspicuously dressed in police riot gear" and shouted police).

## III.

Sherrod also challenges his sentence. First, he argues that the district court procedurally erred when it overruled his objection to an obstruction of justice enhancement. Second, he argues that his sentence was substantively unreasonable because the court failed to consider the need to avoid unwarranted sentencing disparities. Neither argument has merit.

"We review the district court's construction and application of the sentencing guidelines de novo, and we review its factual findings regarding enhancements for

clear error." *United States v. Cordy*, 560 F.3d 808, 817 (8th Cir. 2009). "A defendant is subject to an [obstruction of justice] enhancement under U.S.S.G. § 3C1.1 if he testifies falsely under oath in regard to a material matter and does so willfully rather than out of confusion or mistake." *United States v. Nichols*, 416 F.3d 811, 821 (8th Cir. 2005). "Before imposing an enhancement under § 3C1.1, the district court must review the evidence and make independent findings necessary to establish a willful impediment to, or obstruction of, justice." *United States v. Boesen*, 541 F.3d 838, 851 (8th Cir. 2006) (citation omitted).[2]

Sherrod's PSR recommended that the court apply the obstruction enhancement for his deceptive testimony that the front door was kicked open. The magistrate judge listened to the audio recording of the entry into the home and concluded that it contradicted Sherrod's testimony. The district court noted that it recalled the suppression hearing transcript and then overruled Sherrod's objection, determining that he was deceptive during his testimony. The testimony was not "the result of confusion, mistake, or faulty memory," *see United States v. Simms*, 285 F.3d 1098, 1102 (8th Cir. 2002), so we find no error in applying the enhancement.

Next, we review Sherrod's claim that his 120-month sentence is substantively unreasonable due to sentencing disparities "under an abuse-of-discretion standard." *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc). A district court abuses its discretion when it "(1) fails to consider a relevant factor that should have received significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) considers only the appropriate factors but in weighing those factors commits a clear error of judgment." *Id.* (cleaned up).

---

[2]On appeal, Sherrod does not allege that the district court failed to make a willfulness finding to support the enhancement's application.

The district court considered a variety of factors at sentencing. It found that the PSR's discussion of Sherrod's offense overlooked that at least one firearm was within reach of Sherrod's children and that he had also exposed his children to "horrific dangers." Sent. Tr. 60:21–22. It noted that Sherrod has an "extensive criminal history," *id.* at 59:12, and that he had previously received leniency in four prior cases. And finally, the court felt that it needed to protect the public from Sherrod due to his involvement with drugs and firearms. The court did not abuse its discretion by sentencing Sherrod to the statutory maximum penalty of 120 months in prison when the Guidelines recommended he serve between 235 and 293 months in prison.

## IV.

The district court's denial of the motion to suppress and Sherrod's sentence are affirmed.

_____